S. W. J. HARRIS *et al.*, administrators, plaintiffs in error, *vs.*
D. W. VISSCHER *et al.*, defendants in error.

Where each partner being the head of a family, has applied for and obtained
a homestead in the partnership land, the same being assigned to them sev-
erally in separate parcels, a prior creditor of the partnership cannot, on
reducing the debt to judgment, enforce the judgment over the homestead
right, his debt being one contracted since the adoption of the present con-
stitution.

Partnership. Homestead. Before Judge HILL. Houston
Superior Court. June Term, 1876.

Reported in the opinion.

DUNCAN & MILLER; HALL, LOFTON & BARTLETT; B.
M. DAVIS, for plaintiffs in error.

W. S. WALLACE, for defendants.

BLECKLEY, Judge.

D. W. & J. G. Visscher were copartners under that name
and style when they acquired title to the land now in contro-
versy, and so continued until after they contracted the debt
sought to be collected. The deed conveying the land to them
was taken in the copartnership name, and the title stood thus
when the debt was contracted. The creditor gave credit to
the firm upon the faith of this property. The copartnership
business included, among other things, the cultivation and
use of this land as a farm or plantation. A part of the debt
was contracted in 1871, and a part in 1873. Suit thereon
was brought in May, and judgment was rendered in Decem-
ber, 1875. Before suit was commenced, that is, in January,
1874, the land in question was partitioned by mutual consent
of the partners, each of them taking a deed from the firm for
a separate parcel. Each then proceeded to have his parcel
secured to him as a homestead under the constitution and the
Code, sections 2002, 2003. The applications were regular,
the necessary proceedings were had, under the statute, and the

ordinary's approval was given on the 20th day of January, 1874. The homesteads thus set apart covered all the effects the debtors owned in this state, as partners or otherwise. They had a large claim due to the firm in Alabama, but it does not appear that it was collectible; so that, both as a partnership and as individuals, they were, perhaps, practically insolvent. Each of them was the head of a family, and both were residents of this state. After obtaining judgment against the partnership for his debt, the creditor had his execution levied upon both homesteads, as the property of the firm. Each partner asserted his homestead right by affidavit, and the jury, under the charge of the court, found the property not subject to the execution. The creditor alleging error in the charge and in refusing certain requests to charge, brought the case here for review. The general question presented for our decision is, whether the homestead right, under the circumstances, will screen the property from levy and sale for a debt of the partnership.

Prior to the Code, realty conveyed to and held by a firm belonged to the members as tenants in common : 19 *Georgia Reports*, 14. It is not absolutely certain that the Code changed this rule, by declaring, in section 1887, that a partnership "may arise from a joint ownership, use and enjoyment of the profits of undivided property, real or personal ;" for this language may mean, simply, that partnership may thus exist as to the business carried on, and not that it will or must exist, also, as to the property used in the business. In the present case we understand the evidence as indicating that the land was purchased with partnership funds, and we have no doubt that, in equity, at least, it would and ought to be treated as partnership assets. For the purposes of the present decision, we deal with it as such, legally as well as equitably. Thus treating it, we could find authority for ruling the question before us either way. Some of the cases holding partnership property exempt are to be met with in 37 N. Y., 350; 67 N. C., 140; 8 Nat. Bank Reg., 409; 11 *Ibid.*, 114. Some that assert the negative are reported in 101 Mass., 105; 9

Kansas, 30; 44 Penn., 442; 6 Nat. Bank Reg. 400; 10 *Ibid.*, 145; 12 *Ibid.*, 49; 13 *Ibid.*, 295; 3 Cent. Law Journal, 672. If we felt at liberty to follow the main drift of adjudicated cases in other jurisdictions, we should probably coincide with the authorities last cited, but we do not. It is our duty to expound the homestead provision in the constitution of Georgia, according to its true intent and meaning, and we are reasonably certain that it was the purpose of the framers of that instrument to afford means for arresting the forcible collection of debts of any and all kinds (except those specially enumerated) out of any and all property of the debtor or debtors, not in excess of the homestead allowance. The words of the provision are as follows : " Each head of a family, or guardian, or trustee, of a family of minor children, shall be entitled to a homestead of realty to the value of $2,000 00 in specie, and personal property to the value of $1,000 00 in specie, both to be valued at the time they are set apart. And no court or ministerial officer in this state, shall ever have jurisdiction, or authority, to enforce *any* judgment, decree, or execution against said property so set apart—including such improvements as may be made thereon from time to time—except for taxes, money borrowed or expended in the improvement of the homestead, or for the purchase money of the same, and for labor done thereon, or material furnished therefor, or removal of encumbrances thereon. And it shall be the duty of the general assembly, as early as practicable, to provide by law, for the setting apart and valuation of said property, and to enact laws for the full and complete protection and security of the same to the sole use and benefit of said families as aforesaid." Whether we look alone to this broad and sweeping language, or advert, in aid of interpretation, to the public history of the times that brought it into our fundamental law, we are forced to the conviction that HOMESTEAD was intended to be among the most wide-reaching and sacred things in the constitution.

A court that administers the system fairly and faithfully, must consider the laws of partnership that conflict with it,

modified or repealed by its adoption. They are to bend to it, and not it to them. Difficulties of administration there may be, but with the ample machinery of our law for moulding remedies and adjusting every variety of equitable, as well as legal, rights, the most formidable of these difficulties may be met and overcome. Partnership is but a relation; it is not a person—it is not a legal being; the real owners of partnership property are the partners: 19 *Georgia Reports*, 84. Upon the score of abstract justice, the obligation to discharge partnership debts is no stronger than the obligation to pay individual debts. And upon the score of humanity, the family of a partner, not otherwise provided for, can urge an equal claim to shelter, food and raiment, with the family of an individual debtor. The creditor comes as creditor. He has no title. The whole title was in the two debtors. They have divided the property in a manner satisfactory to themselves. They made the division before the creditor acquired a legal lien. To baffle him by a claim of homestead looks hard; but is it harder upon a partnership creditor to lose his money than upon any other creditor? The law allows debtors to claim homesteads and defy their creditors. Courts can in no case administer a higher justice than that of the law. The law is master, and judges are only its ministers and servants. No servant may presume to be greater than his master.

Judgment affirmed.