WILLIAM G. LEE AND HENRY C. LEE AS INDIVIDUALS AND AS.
LATE COPARTNERS UNDER THE FIRM NAME AND STYLE OF
W. G. & H. C. LEE, APPELLANTS, VS. THE BRADLEY FER-
TILIZER COMPANY, APPELLEE.

EQUITY PRACTICE—EFFECT OF SETTING CAUSE DOWN.
FOR HEARING ON BILL AND ANSWER—HOMESTEAD.
EXEMPTIONS BY PARTNERS—PARTNERS MAY ACQUIRE.
OWNERSHIP IN SEVERALTY OF PARTNERSHIP PROP-
ERTY AND EXEMPT SAME.

1. Where the complainant in a bill in chancery sets the cause
   down for hearing on bill and answer before replication
   filed to the answer, and, consequently, before the cause
   is at issue, such complainant, in thus shutting the defen-
   dant off from proving the truth of his answer, must be
   held at such hearing to have admitted the truth of all
   the allegations of the answer, notwithstanding any formal
   defect in the oath to such answer.

2. If an answer in chancery is insufficiently or defectively
   sworn to, the complainant's remedy is to except to it, or
   to move to strike it from the files, or to ignore it and to.
   apply for decree pro confesso; but where he takes
   neither of these steps, and recognizes it as being sufficient
   for a hearing upon bill and answer, by settting the cause
   down for hearing upon such bill and answer, he thereby
   waives any formal defect in the verification of the answer,
   and thereby brings the case within the application of the
   rule that upon a hearing on bill and answer the allegations.
   of the answer must be held to be admittedly true.

3. Partners, whether solvent or insolvent, have the right;
   at any time before the firm's creditors acquire a lien
   thereon, to sever in good faith their joint interest in and
   ownership of the partnership property by contract of sale
   from one partner to the other, or by a division of the
   property between them in severalty, and may thereafter

successfully claim it as exempt to them, respectively, as heads of families residing in this State under our constitution and laws, although at the time of the acquisition of the property in severalty the firm was insolvent. Fraud can not be imputed to the acquisition by partners of the ownership in severalty of the partnership property on the ground that such ownership in severalty was acquired with the intent and for the purpose of having the law exempt such property from partnership debts.

This cause was decided by Division A.

Appeal from the Circuit Court for Gadsden County.

STATEMENT.

'On October 23rd, 1889, the firms of H. B. Claflin & Co., Golder & Post, Lippmann Brothers and the corporation The Bradley Fertilizer Company filed their joint bill of complaint against the apellants. To this original bill the defendants answered attaching to their answer two deeds as exhibits A and B, exhibit A being a deed formally executed whereby William G. Lee and his wife Cornelia S. Lee remised, released and quit-claimed to Harry C. Lee and his heirs, executors, administrators and assigns certain described lands in Gadsden county, Florida, containing in the aggregate seventy-four and three-quarter (74 3-4) acres, also one mule, one horse, one two-horse wagon and one set of double wagon harness, one saddle and bridle and all the farming implements, plows, gear, &c., which then belonged to the firm of W. G. & H. C. Lee, the consideration expressed being $5.00 and certain real and personal property quit-claimed to them by Harry C. Lee and wife. Exhibit B being a deed formally executed whereby Henry C. Lee and Emma, his wife, in considera-

tion of $5.00 and the conveyance of the real and personal property described in said Exhibit A, remised, released and quit-claimed to William G. Lee, and to his heirs, executors, administrators and assigns certain other particularly described lands in Gadsden county, Florida, containing in the aggregate seventy-two (72) acres more or less, together with two horses, one two-horse wagon, one set of double wagon harness, one single wagon, one open buggy, one set of single buggy harness, one saddle and bridle, and all the store fixtures which were then in the store house situated on the tract of land conveyed. Both of these deeds were dated on January 5th, 1887, and were acknowledged for record on January 6th, 1887, and were recorded in the public records of Gadsden county on January 7th, 1887.

Replication was filed to this answer on January 31st, 1890.

On January 7th, 1895, the complainants' solicitor gave notice to the defendants' solicitor that on the twelfth day of January, 1895, he would apply to the judge for leave to amend their bill and at the same time would move to dismiss the case as to all the complainants except The Bradley Fertilizer Company.

On January 12th, 1895, the judge made an order dismissing the bill as to all complainants except the appellee and allowing it to file an amended bill. On the sixteenth day of January, 1895, the said Bradley Fertilizer Company filed its amended bill against the same defendants individually, and as late copartners, and alleged therein as follows: That on October 1st, 1888, it recovered against defendants as partners aforesaid a judgment in the Circuit Court of Gadsden county, Florida, for the

sum of $608.72 damages, and $4.43 costs, and that ten days thereafter execution was issued thereon and placed in the hands of the sheriff of said county; that such judgment was obtained upon indebtedness of defendants as partners as aforesaid to complainants as follows: Two notes dated May 10th, 1887, due respectively November 1st, 1887, and December 1st, 1887, for the sum of $265.50 each; one note dated May 1st, 1886, due on December 1st, 1886, for $336.10; that various payments had been made on the two notes first described reducing the total amount due upon the three notes to the said sum of $608.72, the amount of said judgment; that the two notes first described executed by the defendants to complainant in pursuance of the contract made prior to January 5th, 1887, by the terms of which complainant agreed to sell and the defendants to buy from it certain commercial fertilizers to be delivered in the spring of said year 1887; and the said fertilizers were so delivered shortly after the making of said contract, and the two notes aforesaid were executed for the purchase price thereof; that prior to January 5th, 1887, defendants as partners as aforesaid were seized and possessed of the real and personal property described in the above mentioned deeds of January 5th, 1887; that on the fifth day of January, 1887, the defendants were insolvent and unable to pay their just debts in full, which fact was at said time unknown to complainant; that on said last named day the defendants conspiring and confederating together to injure and defraud their creditors, of whom the said complainant was at that time one, executed partition deeds each to the other of all said lands, thereby giving to said Henry C. Lee a portion of said lands and personal property in severalty, and to said William G. Lee the balance of said lands and personal property

in severalty, all of which will more fully appear by reference to said original deeds attached to the defendants' original answer filed in this cause; that on the ninth day of April, 1888, a few days after judgment against defendants as partners aforesaid for over seven hundred dollars had been entered in said Circuit Court in favor of various creditors of said defendants, the said defendants each made and filed with the County Judge of Gadsden county, Florida, a written statement declaring the real estate and personal property so partitioned to each and described in said deeds were their respective homesteads and exemptions, and as such exempt from levy and sale under the constitution and laws of Florida; that said deeds of partition were executed by defendants for their own convenience and without any other consideration whatever, and were so executed for the purpose and with the intention of placing or putting said property, which was partnership property, so that it would be exempt to them as individuals and beyond the reach of partnership creditors; that defendants were each at the time of partitioning said real estate and still are insolvent and unable to pay their partnership debts, and said partnership was then insolvent; that the sheriff of said county, although requested so to do by complainant, declines to levy the complainant's execution upon the aforesaid real and personal property, because the defendants forbid him so to do, claiming the same as exempt, and that the defendants have no other property upon which complainant can levy its execution and make the amount thereof; that although said deeds express a consideration of five dollars, yet complainant alleges that this was a feigned and imaginary consideration and no payment of said or any sum was made by either defendant to the other as recited in said

deeds; that said judgment and execution was, recovered upon causes of action against the defendants as partners and due by said partnership; that the real and personal property as aforesaid is not exempt to the defendants within the intention and meaning of the constitution and laws of Florida, and is liable to forced sale to satisfy said execution.

The amended bill prays that the defendants make answer under oath and that the real and personal property described be decreed not to be exempt from levy and sale under said judgment and execution, and that the sheriff of Gadsden county, Florida, proceed to sell the same as is directed by the laws of Florida for the sale of property under execution, and for general relief and process.

On February 14th, 1895, the defendants filed their joint and several answer to the amended bill alleging therein as follows: 1st. That the real and personal property described in said bill was not partnership property at the time the agreement or contract mentioned in complainants said bill was entered into for the purchase and sale of commercial fertilizer as therein stated; that the defendants at the time of said contract and long prior thereto, and prior to the making of any of the notes on which complainant's judgment was founded, had made partition and division of said real and personal property and severed their joint interests therein, and that each of them then and thereupon took possession of the portion thereof to each assigned on such partition and division, and that they and each of them were then solvent and that each of them was living upon, occupying and using as his homestead that portion of the said lands which had been

allotted and assigned to each at the time of the execution of the said deeds of petition of January 5th, 1887.

2nd. That the said deeds of partition were made and executed for the perfection in each of the title to the portion of the said real and personal property which had been long before that time allotted to each on the partition and division as hereinbefore stated. and that the money consideration in each of said deeds of partition stated was actually paid in money as therein recited; and defendants deny that said lands and personal property were so divided and claimed as homesteads for the purpose of defrauding their creditors or placing them beyond the reach of their partnership debts, but merely to secure to each of said defendants a separate individual property which each held and owned severally and exclusively in his own right prior to the making of the contract or the making of the notes mentioned in said amended bill. The defendants swore to this answer to the effect that the matters and things set up therein are true to the best of their knowledge, information and belief, and that they believed them to be true. No replication appears from the abstract of the record, upon which the cause has been submitted, to have been filed to this answer.

On May 29th, 1895, the complainant set the cause down for hearing upon the amended bill and answer, and on September 20th, 1895, the court made a decree adjudging that the real estate and personal property described in said deeds of January 5th, 1887, was not exempt from levy and sale under any execution issued or hereafter to be issued on the above described judgment obtained by the complainant against the defendants, and that the sheriff of said county do proceed to levy upon and to sell the same under complainant's said execution, and that com-

plainant recover its costs of this suit against defendants.

On the eighteenth day of January, 1896, the defendants entered their appeal to this court from such final decree.

The errors assigned are that the court erred in decreeing that the real and personal property in such decree tioned, or that any part, parcel or piece of such property was not exempt from levy and sale under the judgment and execution in such decree described, and in decreeing that the sheriff of said county should levy upon and sell said property under said execution, notwithstanding any claim for exemption which had prior to such decree been, or should thereafter be, presented to him by the defendants or either of them.

2nd. And that the court erred in decreeing costs in favor of appellee and against appellants.

The other facts in the case are stated in the opinion of the court.

*Geo. P. Raney* and *Jno. A. Henderson,* for Appellants.

*Francis B. Carter,* for Appellee.

PER CURIAM        (After stating the facts).

It nowhere appears in express terms from the pleadings in this cause that at the time of the filing of the bill the appellants were such heads of families as to entitle them to homestead exemptions under our constitution, but it does appear from the two deeds exhibited with their original answer that they were both married men with living wives on the sixth day of January, 1887, which would then entitle them as heads of families to a homestead ex-

emption, and the rule is that a status once shown to exist is presumed to continue unless the contrary is expressly shown. It is, however, shown by the bill that the appellants occupied such a status towards the property in controversy as to successfully prevent and deter the sheriff from levying upon and selling such property upon the claim that it was exempt to them, and that in order to effect such levy and sale the appellee was compelled to file its bill to have the validity of such claim of exemption adjudicated by the court, and by such bill in alleging the reasons why such exemption should not be allowed it is nowhere pretended or alleged that said appellants are not heads of families or do not reside upon the lands in controversy as their respective homes and places of abode, but the sole reason alleged against the propriety of the asserted exemption is that the appellee's judgment was recovered upon causes of action that existed in its favor against the appellants as copartners, and that subsequently to the contraction of such debts the property in controversy was owned by them as copartners, and that the conveyances of the respective portions thereof by each to the other by which they each became the owner in severalty of the parts respectively conveyed to each was done for the purpose and with the intention of placing or putting said property, which was partnership property, so that it would be exempt to them as individuals and beyond the reach of partnership creditors, thereby practically admitting that but for and aside from the particular reasons urged in the bill against such exemptions the appellants were otherwise in position successfully to assert them.

The decree appealed from was rendered at a hearing upon the amended bill and answer thereto, without other

evidence than that afforded by such pleadings. As before stated, no replication was filed to the amended answer of the defendant, and the cause was therefore not at issue when the complainant set it down for hearing upon bill and answer, and consequently it was thus set down for hearing before the expiration of the time allowed by the rule for taking testimony.

Circuit Court Equity Rule 71 provides that three months shall be allowed to the parties in equity causes, within which to take testimony *after the cause is at issue.* The defendants under the circumstances had the right to introduce proof to sustain the allegations in their answer, and the complainant in shutting them off from making such proof by setting the cause down for hearing on bill and answer must be held at the hearing thus had to have admitted the truth of all the allegations of the answer, notwithstanding any formal defect in the oaths to such answer. If the answer, as is contended, was insufficiently or defectively sworn to, the complainant's remedy was to except to it or to move to strike it from the files, or to have ignored it and applied for decree *pro confesso;* but having recognized it as being sufficient for a hearing upon bill and answer it thereby waived such formal defects in its verification, and brought it within the application of the rule that upon a hearing on bill and answer the allegations of the answer must be held to be admittedly true. The rule is thus stated in 1 Hoff. Ch. Pr., cited in note 1 Daniel's Ch. Pl. & Pr., p. 732: "All material allegations of the bill may be proved as if they had been distinctly put in issue by the answer; and if no replication is filed, the matters of defence set up will be considered as admitted by the plaintiff, as in the case of a sworn answer." The denials in this answer that are responsive to the alle-

gations of the bill must be held, therefore, to have been admitted to be true at the hearing had in this case.

The bill alleges that the deeds of partition whereby the defendants severed their joint interests as copartners in the respective parcels of the property conveyed to each were executed by them for the purpose and with the intention of placing or putting said proprty, which was partnership property, so that it would be exempt to them as individuals and beyond the reach of partnership creditors. This allegation of the bill is squarely denied by the answer, and upon a hearing on bill and answer such denial was admitted to be true.

This brings us to the question whether after a dissolution of a partnership, or after partnership property has become vested in severalty in one individual partner, such property can be exempted to the partner who has acquired the title in severalty as against partnership debts. Judge FREEMAN in his work on Executions, Vol. 2, section 221 (3rd. ed.), after a full discussion of the authorities, lays down the rule as follows: "That the dissolution of a partnership or the transfer of all the property thereof to one partner, even though with a view to entitle him or both of the partners to the privilege of the exemption laws, does not constitute a fraud upon their separate creditors or the creditors of the firm, and hence that, whenever the partnership relations cease, so that the legal title to the property is vested in the partners as tenants in common, or wholly in one as the transferee of the others, the right to hold such property as exempt from execution attaches, if it is of such a character that it might have been exempt had it never been partnership assets." Goudy v. Werbe, 117 Ind. 154, 19 N. E. Rep. 764; Worman v. Giddey, 30 Mich. 151; Bates v. Callender, 3

Dak. 256, 16 N. W. Rep. 506; O'Gorman v. Fink, 57 Wis. 649, 15 N. W. Rep. 771; Harris v. Visscher, 57 Ga. 229; Watson v. McKinnon, 73 Texas 210, 11 S. W. Rep. 197. We think that partners, acting in good faith, have a right to sever their joint interest in the firm property by contract of sale from one partner to the other, or by a division of the property between them, at any time before the firm ceritors obtain a lien thereon, Griffin v. Orman, 9 Fla. 22, and that they may thereafter successfully claim it as exempt from execution, although at the time of the severance the firm be insolvent. A firm of copartners, whether solvent or insolvent, have the right at all times to sever their partnership relation, and, prior to the acquisition of liens upon their partnership property by creditors, to sever their joint ownership of such property and in good faith to acquire the ownership of part or the whole thereof in severalty, and such dissolution and severance in the ownership of the property in and of itself can work no fraud upon creditors, and when so severed the constitution, without any effort or action upon the part of the individual partner who has thus acquired the ownership in severalty, *ex próprio vigore* impresses upon it the quality of exemption from forced sale for debts. To say that if a party acquires property with the intention that the law shall exempt it from his debts such acquisition is a fraud upon creditors, is to impute fraud to the law in the face of the maxim *lex nemini operatur iniquum*. The title to the property sought to be exempted in this case, though formerly vested in the copartners was completely vested in each partner respectively in severalty by the deeds of conveyance mutually executed between them, and this was effected before the acquisition by the complainant of any lien thereon by judgment or otherwise, and inasmuch as

the answer, admitted to be true, avers such partition and severance of title to have been done in good faith, the property is exempt to the respective defendants under our constitution and laws from forced sale for debts, either partnership or individual.

The decree appealed from is reversed with directions to enter a decree dismissing the complainant's bill, and that the defendants therein go hence without day with their costs. It is further adjudged that the appellee do pay the costs of this appeal.