HOLMES LA MAR, *et ux.,* and GEORGE HATTEM, unmarried,
v. WILLIAM T. LECHLIDER, *et ux.*

185 So. 833.
Opinion Filed January 3, 1939.
Rehearing Denied February 3, 1939.

704

*Will O. Murrell* and *W. C. Johnson,* for Appellants;
*Lee Guest,* for Appellees.

PER CURIAM.—In 1930 Holmes LaMar, 50 years of age, purchased the property herein involved from Jennie V. Bell through the Florida National Bank of Jacksonville, trustee, for the sum of $3000.00 ($800.00 in cash and the assumption of a first mortgage in the amount of $2200.00 in favor of one Elise Blum, executrix). The plaintiffs, William T. Lechlider, 67 years of age, and his wife, Maude LaMar Lechlider, 66 years, and sister of Holmes LaMar, were residents of Cleveland, Ohio. While visiting the defendants, appellants here, the plaintiffs had often expressed a desire to live in the State of Florida.

In 1932 it was mutually agreed between the two families that an addition should be built on to the house then standing upon the property, the plaintiff Lechlider paying for all the materials and labor necessary for the construction and to receive therefor "an interest in the property" and a place where the plaintiffs could live during their old age. There was no express agreement, however, for the conveyance to them of any undivided or specific or any other interest in the lands of defendants.

A contractor was called and plans for the erection of an addition to cost $2600.00 were made. The construction was immediately commenced and had progressed sufficiently far

by April 8, 1933, that at that time the plaintiffs shipped to Florida their household furnishings and placed them in the enlarged dwelling. The cost of construction far exceeded the original estimate of $2600.00, and did actually cost $4650.00, the last of which was paid October 5, 1933. After the construction of the addition each family considered that the Lechliders had acquired some interest in the land thaugh the precise nature of that interest does not clearly appear.

There was a $2,200.00 mortgage on the property (the Blum mortgage above referred to) which Lechlider was informed of in 1933 and when he went to Cleveland he sent LaMar three checks, one for $2,000.00, one for $100.00, and one for $50.00, with instructions to have the mortgage taken up and transferred to plaintiffs. Subsequently the defendant, Holmes LaMar, without intending to lay a foundation for defrauding plaintiffs or damaging them in any way, negotiated with Elise Blum and secured, instead of an assignment, a satisfaction of the mortgage. Correspondence developed between the plaintiffs and the defendants as to the defendant LaMar having obtained a satisfaction of this mortgage rather than having it transferred to the Lechliders; and a misunderstanding arose as to the use by the defendants of words "you can put value you wish on the mortgage" in a letter in which defendant discussed making a new mortgage to the Lechliders in place of having the old one transferred. The plaintiffs, believing LaMar was attempting to defraud them, wrote a letter in answer to that of LaMar above referred to, requesting that the mortgage be for $7,500.00 at 2½% interest, which, Lechlider wrote, would equal 8% on $2250.00.

This, of course, he was not entitled to, but in view of past experiences and LaMar's letter, it was not unreason-

able to request it. Lechlider's reply reminded LaMar that because of defects in some transaction, his father once woke up and found himself owning nothing and suggested that with such a mortgage ($7,500.00 at 2½%) if any one wanted to kick them out in their old days when LaMar and his wife were gone, they would "still have a share." The plain purport of this letter was that unless they had something to show for the improvements and advances, upon the death of the LaMars, their only son and heir, "Bill," would proceed to deprive plaintiffs of what they were to receive, should their agreement with the LaMars be performed.

In the situation thus created nature took its course. The son resented the slur on him, and at first LaMar attempted to be peacemaker. However, in the course of time a situation developed which, aided with a little liquor, resulted in a physical fight between defendant LaMar and the plaintiff during the Christmas holidays of 1934.

On February 15, 1935, the defendants, Holmes LaMar and Sue E. LaMar, his wife, duly executed and delivered to the defendant Hattem their mortgage deed to secure a note of the same date in the amount of $5200.00 on the property involved. The Master found that the note and mortgage were not *bona fide*, but were a fraudulent device to defeat the plaintiff's claim. However, this mortgage has been satisfied and is no longer a part of this case.

The two families continued to reside together on the premises until March 7, 1935, when the Lechliders moved away, this being one day after the institution of the present suit, and the day before the service of process. They have since been prohibited from returning by Mr. LaMar. Mr. LaMar has not rescinded that prohibition.

The Lechliders filed their bill of complaint praying for

specific performance of an alleged agreement to convey an interest in the property; that in the event specific performance is not the remedy to which plaintiffs would be entitled, then that a lien be declared and enforced against the property to the extent of the money expended for improvements thereon; that the plaintiffs be subrogated to the $2200.00 mortgage which was satisfied instead of assigned; and that the $5200.00 mortgage claimed by defendant George Hattem be decreed to be inferior to the rights and interests of the plaintiffs.

The lower court refused to grant specific performance, but held that plaintiffs had made valuable improvements on the property involved herein, the reasonable value of which was $4650.00; that to secure that amount plus interest plaintiffs were entitled to a lien on the property in question; that plaintiffs were the equitable assignees of the Blum mortgage and were subrogated thereto in the principal amount of $2200.00 paid plus interest; that the Hattem mortgage was as to plaintiff's rights subordinate, inferior, void and of no effect.

It was undoubtedly the intention of both the LaMars and the Lechliders that, by the construction of the improvements thereon, the Lechliders should acquire an interest in the land herein involved, but there was clearly no definite or certain contract in any of the following particulars; the consideration, in terms either of money or of exactitude as to the improvements to be erected; the time when the contract was to be performed or the time when the interest being acquired by the Lechliders was to be vested; or the quantity, (i. e. proportionate interest in the property) or quality (i. e. whether life estate or fee interest in the property) of the interest being acquired by the Lechliders. The lower court correctly concluded that specific perform-

ance could not be granted the plaintiffs. Glinski v. Zewadski, 8 Fla. 405; Patrick v. Sears, 19 Fla. 856; Edwards v. Rives, 35 Fla. 89, 17 So. 416; Connor v. Joseph Dixon Crucible Co., 92 Fla. 716, 110 So. 128; Rundel v. Gordon, 92 Fla. 1110, 111 So. 386.

In cases brought to enforce the specific performance of contracts, as a general rule, if the plaintiff fails to make out a case for specific performance, he is not entitled to have the case retained for the award of damages or compensation for improvements. Lewis v. Yale, 4 Fla. 418, 437; Chabot v. Winter Park Co., 34 Fla. 258, 15 So. 756, 43 Am. St. Rep. 192; 58 C. J., Specific Performance, Sec. 611, p. 1259.

Where, however, there are special equities in his favor, and he has no full and adequate remedy at law, equity will retain the bill, take an accounting of the amounts due the plaintiff, and enforce a lien on the premises involved for the amount of the damages or value of improvements. Townsend v. Vanderwerker, 160 U. S. 171, 40 L. Ed. 383; Pitt v. Moore, 99 N. C. 85, 6 Am. St. Rep. 489, and note, 495; Glinski v. Zewadski, 8 Fla. 405; Chabot v. Winter Park Co., *supra,* and note 43 Am. St. Rep. 202; 58 C. J., Specific Performance, Secs. 611, 613, pp. 1259, 1263.

In Glinski v. Zewadski, *supra,* an agreement, the terms of which were in much doubt and uncertainty, was entered into in a spirit of confiding friendship by which plaintiff Zewadski was to make certain improvements upon the land of Glinski, the defendant. It is interesting to note that in the Glinski case, Zawadski, the plaintiff and the man who was to make the improvements, was even first at fault, the reverse of which is true here because the Master found that LaMar was first at fault.

In Glinski v. Zewadski, *supra,* the lower court was affirmed in retaining the bill and recited as its reason for so doing:

"It appearing to the Court from the circumstances of this case as disclosed that the said John H. Zewadski and Mary E. Zewadski entered upon the said tract of land under an agreement with said Glinski, either as 'tenants' or purchasers thereof for value, and while thus in possession, by and with the knowledge and consent and agreement with said Glinski, expended money in lasting improvements upon said lot in erecting the said Pulaski House and premises in said bill of complaint mentioned, and also became security on the acceptance of the joint draft in said bill of complaint mentioned, and supplemental bill mentioned, which sums thus expended and paid the said Glinski held in trust said premises for the said Mary E. Zawadski, and which said lot, with Pulaski House thereon erected, he, the said Glinski, while the said Zawadski and wife were then in possession, mortgaged to the said Gilliland for himself and others to secure the payment of *antecedent debts* which said Glinski owed to said Gilliland and others, defendants, and the Court being satisfied the prior trust must prevail and the same be established as a prior lien on the said lot and premises after deducting any set-off established by said Glinski and any rent for time the said Pulaski House and premises were occupied by said John H. and Mary E. Zewadski up to the time of the sale of the same under execution of foreclosure of said mortgage."

These plaintiffs have no plain remedy at law, and even if they did have, the defendant LaMar is insolvent. He gave his consent to the making of his land of the improvements erected by the Lechliders. This alone has been held to constitute sufficient basis for the declaration of a lien for

the improvements. Smith v. Smith, 125 N. Y. 224, 26 N. E. 259.

The Court is of the opinion that the above facts present a situation which entitled the plaintiffs to a lien upon the lands herein' involved. Then the question arises as to whether such a lien could be enforced against the homestead of the defendants.

In Jones v. Carpenter, 90 Fla. 407, 106 So. 127, 43 A. L. R. 1409, this Court held that an equitable lien existed against one's homestead for money of another used by him in the improvement of the homestead property. In that case the defendant converted funds belonging to a bread company into labor and materials to make substantial improvements to his home without the knowledge or consent of the bread company. This court enforced the lien of the trustee in bankruptcy of the bread company against the homestead of the defendant. It is true, as contended by defendant herein, that the Jones case, *supra,* is based upon some direct, immediate, willful and flagrant fraud; however, it is authority for the proposition that a lien might arise which may be enforced against the homestead, even though it is not in specific terms included in the constitutional provision (Article X, Sec. 1, Constitution of Florida).

This Court holds that the lien of plaintiffs is enforceable against the homestead of defendants, upon the theory that since the plaintiffs have innocently, and in the belief that they had the right to do so, with the consent of the holder of the legal title, placed on his land permanent and valuable improvements, it would be inequitable to permit the owner to retain the improvements without compensating the parties who placed them there for their reasonable value; that so to permit him to retain them would be unjustly to en-

rich him. This identical reasoning is equally applicable to the defendant, Sue T. LaMar, as to her inchoate right of dower. Estoppel works against married women as well as against persons *sui juris,* especially when they must claim under another who is estopped, as must be the case with the defendant, Sue T. LaMar. Huddleston v. Graham, 73 Fla. 350, 74 So. 414; Mexican Crude Rubber Co. v. Ackley, 101 Fla. 552, 134 So. 585; Maxwell v. Sullivan, 123 Fla. 263, 166 So. 575. And see McAdoo v. Moses, 101 Fla. 936, 132 So. 638. The wife should have no higher or greater right than her husband under such circumstances. She, as much as her husband in this case, permitted the improvements and, whether they are compensated for or not, will have as much enjoyment of them as will he. The Court is therefore of the opinion that the lien should be effective against the defendant, Sue E. LaMar.

The defendants in their brief have not argued the questions of whether the lower court erred in declaring plaintiffs to be the equitable assignees of the Blum mortgage and in declaring plaintiff's rights to be superior to those of Hattem under his mortgage.

The Court is not basing this decision on the principle that the transaction in question constituted a joint adventure. A joint adventure is a special combination of two or more persons, where in some specific venture a profit is jointly sought wtihout any actual partnership or corporate designation. 33 C. J., Joint Adventures, Sec. 1, p. 841. The proof shows that plaintiffs did not furnish the money to make the improvements to the house with a view to making a profit. It was built to be their home.

To say that a lien could not be decreed against the homestead under the facts in this case would be to make the homestead an instrument of fraud.

For the reasons stated, the decree is affirmed.

So ordered.

Affirmed.

Terrell, C. J., and Whitfield, Brown, Buford and Chapman, J. J., concur.