In re Howard LEVINE, Debtor,

Stephen H. JUDSON, as Trustee in Bankruptcy, Plaintiff,

v.

Howard LEVINE, Individually, and Howard Levine and Sheila Levine, his wife, Defendants.

Bankruptcy No. 82–00409–BKC–SMW.
Adv. No. 82–0892–BKC–SMW–A.

United States Bankruptcy Court,
S.D. Florida.

May 4, 1984.

Martin L. Sandler, Howard J. Berlin, Miami, Fla., for debtor.

Stephen Judson, Miami, Fla., Trustee.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE having come on to be heard upon a Second Amended Complaint to impress a lien upon the Debtor's homestead property to recover a fraudulent transfer and the Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

## FINDINGS OF FACT

A little over a year prior to the filing of his Bankruptcy Petition, the Debtor entered into an investment with a friend and previous business associate, DAVID VILLARI. (VILLARI)[1]. VILLARI had obtained funds from the Debtor used in connection with a home reconstruction project he was developing in Ft. Lauderdale, Florida. Pursuant to the agreement reached between the Debtor and VILLARI, the Debtor over the course of three (3) to six (6) months, advanced VILLARI approximately NINETY THOUSAND DOLLARS ($90,000.00), which was to be repaid with interest at a market rate to be agreed upon between both parties after the project was completed. The Debtor obtained the funds to invest in VILLARI'S project through a loan from Intercontinental Bank of Miami. The Loan was structured as a line of credit to the Debtor, secured by a mortgage on the Debtor's residence, signed by the Debtor and his wife.[2] All funds invested by the Debtor in the VILLARI· project were derived from drawing down on that line of credit.

Early in 1982, prior to the Ft. Lauderdale project's completion, the Debtor requested VILLARI to return his investment. He believed the real estate market was poor and was not optimistic about its' imminent resurgence. VILLARI was of a differing opinion and willingly accepted the proposal as he considered this an opportunity to buy out his partner at a reasonable price, thus reserving to himself all of the potential profit in the deal.

During this same period of time, the Debtor was defending a lawsuit brought by BURGER KING CORPORATION (BURGER KING). BURGER KING alleged there were sums due in connection with a BURGER KING franchise in San Bernadino, California, of which the Debtor was one of the principals and one of the Defendants in the lawsuit pending in the Circuit Court for the Eleventh Judicial Circuit, Dade County, Florida.

It took VILLARI approximately thirty (30) days to comply with the Debtor's request for payment. VILLARI and the Debtor agreed on a sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) and a check in that amount was delivered to the Debtor on March 4, 1982.

During January and February of 1982, the Debtor, upon the advice of his trial counsel, met with bankruptcy counsel due to his inability to resolve the controversy with BURGER KING. During his consultation with bankruptcy counsel, the Debtor sought advice regarding the status of the funds he was expecting to be paid by VILLARI and how the funds would be treated in a bankruptcy proceeding. The Debtor was advised by counsel that pursuant to the wealth of case law interpreting § 522 of the Bankruptcy Code, together with the legislative history, it was apparently permissable to engage in pre-bankruptcy planning by converting otherwise non-exempt property into exempt property. Upon his receipt of the ONE HUNDRED THOU-

---

1. At various times this transaction was characterized as either a loan or an "investment", a joint venture. The description is immaterial for the purpose of this discussion.

2. The Debtor's residence qualified as his homestead and that was never an issue in this case.

SAND ($100,000.00) Dollar check from VILLARI, the Debtor paid the entire sum to Intercontinental Bank to reduce his outstanding loan on the line of credit.

On March 8, 1982, the Debtor filed his Bankruptcy Petition and an Order for Relief under Chapter 7 of the Bankruptcy Code was entered.

At the close of Plaintiff's case, a motion for involuntary dismissal was made on behalf of the Defendant, Sheila Levine. Since the Plaintiff failed to establish a prima facie case against that Defendant, this Court granted the motion. A separate order of dismissal has been entered and consequently this opinion will deal only with the claim made against the Debtor.

## CONCLUSIONS OF LAW

In Count I of the Second Amended Complaint, the Trustee seeks to impose a lien on the Debtor's homestead property because the Debtor paid a loan secured by the property with non-exempt assets on the eve of bankruptcy. The Trustee contends this is an actionable fraud on the Debtor's creditors.

The Trustee has challenged the debtor's right to an exemption of homestead property in the sum of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) (the amount transferred to Intercontinental Bank). As the head of the household, the Debtor is entitled to have his homestead exempt from the imposition of a lien of this nature, and as will be discussed infra, the exemption is jealously guarded by the Florida courts. Pursuant to F.S. § 222.20, the State of Florida has elected to opt out of the debtor exemptions under 11 U.S.C. § 522. Therefore, the homestead exemption for debtors in Florida is predicated upon Florida law.

The homestead exemption law is found in the Florida Constitution Article X, Section 4:

> There shall be exempt from forced sale under process of any court, and no judgment, decree, or execution shall be alien thereon, ... the following property owned by head of a family: (1) a homestead, ...

The legislative intent of this language is unambiguous: "There shall be exempt ..." *id.* Both the Supreme Court of Florida and the Florida Legislature have deemed the homestead exemption to be sacred, strongly and emphatically dictating that it is not to be tampered with. The sanctity of this exemption in Florida is reflected in numerous decisions.

In *West Florida Grocery Company, et al. v. Teutonia Fire Insurance Company,* 74 Fla. 220, 77 So. 209, (1917) the Supreme Court, in discussing the right to a homestead exemption stated:

> Statutes conferring on a debtor the right to exemption of property from sale for payment of debts have been generally regarded as founded in a human and enlightened policy, having respect to the common welfare, as well as to the benefit of the individual debtor. Their obvious purpose is to secure to each family a home and means of livelihood, irrespective of financial misfortune, and beyond the reach of creditors; security of the state from the burdens of pauperism, and of the individual citizen from destitution. Such statutes are entitled to a liberal construction—a construction in conformity with the benevolent spirit which move their enactment.

The Court continued this philosophy in *Hill v. First National Bank of Marianna,* 79 Fla. 391, 84 So. 190 (1920) where at page 192 it opined:

> The homestead right is not limited to a mere holding of the legal title to the exempt property "from forced sale"; it contemplates and includes the beneficial, peaceful and uninterrupted use and enjoyment of such property. Such right is superior to the claims of creditors. The policy of the law conferring it is to preserve the home for the family even at the sacrifice of just demands and protect the family from destitution and warrant.

And in *Bigelow, et al v. Dunphe,* 143 Fla. 603, 197 So. 328 (1940) the Supreme Court said at page 330:

The homestead laws are not based upon the principles of equity; nor do they in any way yield thereto; their purpose is to secure the home to the family even at the sacrifice of just demands, the preservation of the home being deemed of paramount importance.

In *Spach v. Kleb*, 112 So.2d 21 (3d DCA 1959) (Certiarari discharged at 117 So.2d 726, after oral argument, when the Court determined that jurisdiction did not lie due to a failure to establish a conflict among districts on the legal issue), the court was faced with factual circumstances similar to the case sub judice. In affirming the dismissal of a complaint brought by a bankruptcy Trustee, with prejudice, the court held that the transfer of non-exempt to exempt property does not constitute an attempt to hinder, delay and defraud creditors. Consequently a bankruptcy Trustee is not entitled to an equitable lien on the homestead. The court in *Spach* cited *Lee v. Bradley Fertilizer Company*, 44 Fla. 787, 33 So. 456 (1903) dealing with the same issue. The *Lee* Court said at 33 So. p. 459:

> The transfer of all the property thereof to one ... even though with a view to entitle [them] to the privilege of the exemption laws, does not constitute a fraud upon their separate creditors.

The *Spach* decision also points to the conclusion reached by the Florida Supreme Court in *Lee*, supra, by holding "that a party who acquires property with the intention that the law shall exempt it from his debts does not commit a fraud upon his creditors, for to do so would impute to the law an intention to work an injustice." *Spach*, supra at 22. *Spach* held that the transfer did not give rise to a special equity in the creditors which would entitle them to a specific lien upon the otherwise exempt assets.

Although the Florida Courts have recognized limited exceptions permitting a violation of the homestead protection, the exceptions are strictly construed. They are uniformly an equitable attempt to rectify otherwise heinous and unjust circumstances. In imposing an equitable lien on otherwise exempt property, there is generally a finding of "reprehensible conduct," which describes the action giving rise to the need for the equitable remedy, such as the acquisition of exempt property by the use of tortiously acquired funds.

For example, in *Jones v. Carpenter*, 90 Fla. 407, 106 So. 127 (1925), the Defendant, an employee of a bread company, embezzled funds from his employer and placed those funds into his homestead prior to filing bankruptcy. The Trustee of Carpenter's bankruptcy case obtained an equitable lien on his homestead equal to the amount of the funds embezzled and converted into exempt property. In its decision, the Supreme Court held:

> "Purely from the standpoint of commercial or business ethics, it would be difficult to state a set of facts constituting more reprehensible conduct, and while this Court has repeatedly held that organic and statutory provisions relating to homestead exemption should be liberally construed in the interest of the family home, they should not be applied so as to make them an instrument of fraud or imposition upon creditors ..." *id* 106 So. at 130.

In *LaMar, et al. v. Lechlider*, 135 Fla. 703, 185 So. 833 (Fla.1939) the court cited *Jones v. Carpenter*, supra as authority for the imposition of an equitable lien upon homestead property even though the facts are not included within the exceptions provided by the Florida Constitution.[3] In *LaMar*, the court concluded that the facts and circumstances amounted to unjust enrichment in the form of permanent and valu-

---

3. The exceptions expressly set forth in Art.10 § 4(a) of the Fla. Const., are liens for the:
   1. payment of taxes and assessments;
   2. obligations contracted for the purchase, improvement or repair of real property; and

3. obligations contracted for house, field or other labor performed on the property.

able improvements to the homestead by innocent parties without compensation.

Finally, in *Clutter Construction Corporation v. W.R. Clutter,* 173 So.2d 761 (3d DCA 1965), a case cited by the Trustee in support of his position, the Court summarily dismissed the right to recover an equitable lien against homestead property, citing the *Jones, Lamar,* and *Spach* cases, saying: "it appears that to recover an equitable lien against real property used as a homestead it is necessary for the Plaintiff to establish fraud or reprehensible conduct." *Clutter,* supra at 761–2. It should be noted that in *Clutter* such conduct was not established.

> "[A] claimed exemption enjoys a presumption of validity and, therefore, the Trustee has the burden of challenging the claim and the burden of proof." *In re Crump,* 2 B.R. 222 (Bkrtcy.S.D.Fla. 1980). Here, the Trustee did not overcome the presumption and did not sustain the burden of proof by establishing a transfer made with intent to hinder, delay or defraud conditions in violation of 11 U.S.C. § 548, the gravamen of Count II of his complaint.

In discussing 11 U.S.C. § 548(a)(1) Collier on Bankruptcy, Vol. 4 § 548(2) at P. 548 says:

> Some Courts have been careful to require an "intent unlawfully to hinder or delay" to indicate that more is demanded than a simple intent to prefer when a transfer to a creditor is at issue.

4 Collier on Bankruptcy, ¶ 548.02, p. 548–30–31 (15th ed., 1983). It is further stated:

> Where, on the other hand, the debtor is motivated by a purpose to protect his credit standing, to continue in business, and to rehabilitate himself financially, his action in making transfers or in incurring obligations to effect such purpose has often been held not to be fraudulent in fact, not withstanding his insolvency at the time of entering upon such transactions.... (A)n insolvent may exchange property subject to levy by his creditors for exempt property without

being charged with intent to hinder, delay or defraud his creditors.
>
> *Id.* at p. 548–39.

In the final analysis, the Court must determine whether on its face, a pre-bankruptcy transfer of property from non-exempt to exempt status constitutes a fraud on creditors or is a transfer made with intent to hinder, delay or defraud them. In that regard, the case law is almost universal in favor and recognition of this right to engage in such pre-bankruptcy planning. The legal authority for this position is found to exist in jurisdictions throughout the country and represents the overwhelming weight of authority.

In the case of *In re: Hugh D. Reed,* 700 F.2d 986, 10 B.C.D. 695 (5th Cir.1983), the Court held:

> Before the Bankruptcy Code was adopted in 1978 it had been urged that property obtained in such last minute conversions be ineligible for exemption. ... The Code however, adopts the position that the conversion of non-exempt to exempt property, without more, will not deprive the debtor of the exemption to which he would otherwise be entitled. 3 Collier on Bankruptcy, ¶ 522.08[4]. ... The rationale behind this congressional decision is summed up at 3 Collier, ¶ 522.08[4]. The result which would obtain if debtors were not allowed to convert property into allowable exempt property would be extremely harsh, especially in those jurisdictions where the exemption allowance is minimal. *Id.* 700 F.2d at 990, 10 B.C.D. at 697.

Numerous other decisions which this court finds persuasive are: *In re: Levy Ford, Jr.,* 3 B.R. 559 (Bkrtcy.Md., 1980); *Wudrick v. Clements,* 451 F.2d 988 (9th Cir.1971); *In re: Adlman,* 541 F.2d 999 (2d Cir.1976); *In re: White,* 28 B.R. 240 (Bkrtcy.E.D.Va.1983); *In re: James,* 31 B.R. 67 (Bkrtcy.S.D.1983).

The Trustee argues that the mere act of converting property from non-exempt to exempt status is a badge of fraud and is prohibited. This Court does not agree. To make such a conclusion would require an

implication of fraud. If it is generally held to be legitimate, how can this Court imply from the transfer an intent to defraud? The net affect of the transfer was to return previously exempt property value back to the homestead. As was said in *Frosberg v. Security State Bank of Canova*, 15 F.2d 499 (8th Cir.1926):

> Before the existence of such fraudulent purpose can be properly found, it must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of nonexempt assets into exempt and which are indicative of such fraudulent purpose. Our conclusion is that the transfer of property in the instant case, being but a step in the conversion of non-exempt assets, no extrinsic facts and circumstances indicating fraud being present, did not constitute a transfer of the bankrupt's property with intent to hinder, delay or defraud creditors. (emphasis added) *Id.* at 502.

See also, Collier on Bankruptcy at ¶ 522.-08[4] p. 522–36–7.

The cases cited by the Trustee do nothing to alter this Court's conclusion with respect to the weight of authority on this issue. The Trustee seeks to support his theory by urging this Court to adopt *In re: Ralph K. Anderson*, 31 B.R. 635 (Bkrtcy. Minn.1982). This Court has carefully considered the *Anderson* case but does not find it controlling. The *Anderson* case was based upon an analysis of Minnesota law. The Court in *Anderson* apparently did not consider the case of *O'Brien v. Johnson*, 275 Minn. 305, 148 N.W.2d 357 (1967) where the Minnesota Supreme Court opined:

> It has long been the law of this state that a judgment debtor may assert an exemption for the express purpose of evading his creditors. This we have held is not fraudulent regardless of the debtor's motive.

Further, this Court does not agree with the Court's conclusion in *Anderson* that the congressional intent contained in the legislative history behind § 522 should be disregarded, in light of the wealth of case

law to the contrary. This Court believes the statement contained in the legislative history to § 522 was based upon Congress' recognition that the transfer of assets from non-exempt to exempt is a recognized and approved method of pre-bankruptcy planning. In addition, the cases cited to support the Court's conclusion in *Anderson* were cases clearly in line with cases like *Jones v. Carpenter*, supra, and other decisions in Florida dealing with reprehensible conduct.

The other cases cited by the Trustee are all easily distinguished and do not support a contrary view. *Clutter Construction Corporation v. Clutter*, 173 So.2d 761 (3d DCA 1965) discusses reprehensible conduct. *Ryskind v. Robinson*, 302 So.2d 427 (4th DCA 1974), deals with use of the homestead as a shield for a fraudulent transaction. *In re: Schwingle* 15 B.R. 291 (D.C.W.D.Wis.) involved a convoluted plan proposed and intended by the debtor and her sons to convert non-exempt property to exempt property in order to specifically disenfranchise a judgment creditor. The Court held such activities constituted actual intent to place property beyond the reach of creditors. In effect, the homestead was *created* with intent to commit fraud on the debtor's creditors. It is not applicable here.

Even in *In re: Collins*, 19 B.R. 874 (Bkrtcy.M.D.Fla.1982) the Court, while ignoring the case of *Spach v. Kleb*, supra, recognized that the fraud there was based upon factual circumstances wherein the debtor liquidated business assets to pay off a mortgage lien on his homestead at the expense of his creditors, and *concealed* this transfer by failing to disclose it on his schedules. The *concealment* was the fraud and that was the basis for objecting to the debtor's discharge under 11 U.S.C. § 727. In the case at bar, the Court is not confronted with issues of discharge.

In conclusion, the Trustee has failed to demonstrate through evidence in this case a factual scenario that constitutes a fraud sufficient to warrant an equitable lien or a finding of fraud under § 548 of the Bank-

ruptcy Code. When reduced to its simplest form, the Trustee has attempted to convince this Court that a pre-bankruptcy transfer of nonexempt to exempt property is an ipso facto fraud and an intent to hinder and delay creditors. To accept that proposition this court would be required to ignore the substantial body of Florida law, together with the well reasoned opinions of the various other courts throughout this country. The Trustee has failed to show a right to relief in this cause and therefore judgment shall be entered for the Defendant.

A separate Final Judgment will be entered in accordance with these Findings of Fact and Conclusions of Law.