RAY C. WHITTAKER and IRENE E. WHITTAKER, his wife, *Appellants,* v. LAVELLE BEE EDDY and LEESBURG STATE BANK AND TRUST COMPANY, *Appellee.*

147 So. 868.
Opinion filed April 24, 1933.

*Phillips* and *Thompson* of Clearwater, for Appellants;
*T. G. Futch* and *P. C. Gorman* of Leesburg, for Appellees.

BARNS, Circuit Judge.—On the 29th day of November, 1930, a contract was entered into between R. C. Whittaker and Irene E. Whittaker, his wife, who are hereinafter referred to as the "Whittakers," and Lavelle Bee Eddy, hereinafter referred to as "Eddy," the principal provisions of which contract were that the Whittakers were:

"To purchase a life membership in the Baptist Old People's Home, at Maywood, Illinois, for the party of the second part, and in the event of the inability of the parties of the first part to so purchase said membership, to provide a life membership for the party of the second part in some institution for old people equally as good as the Baptist Old People's Home, at Maywood, Illinois, and in the event of the impossibility to procure a life membership in an institution in Cook County, Illinois, for the party of the second part, to provide for the party of the second part and to furnish to the said party of the second part, at the expense and cost of the parties of the first part, a proper

room, medical care, medicine, clothing and food in the home of the parties of the first part with all the necessities of life, suitable to the condition, age and standing in life of the party of the second part, and at all times to kindly treat and care for the party of the second part by the parties of the first part."

for which the Whittakers were to receive from Eddy a deed to certain real estate.

The Whittakers bring their bill of complaint alleging performance of the contract on their behalf, the payment to Eddy of over two thousand dollars pursuant to the provisions of the contract, and complain that Eddy refuses to abide by its terms. The pertinent paragraphs of the bill of complaint being as follows:

"Complainants aver that they have paid to the said defendant, Lavelle Bee Eddy, the sum of $500.00; that they have offered to provide support for the said defendant, Lavelle Bee Eddy, in a good comfortable home in all respects according to the terms of said agreement; that they have paid to defendant, Lavelle Bee Eddy, the sum of $7.50 weekly from the 6th day of December, 1930, up to the institution of this suit; that they have offered to provide a life membership for said defendant in some institution as good as the Baptist Old People's Home at Maywood, Illinois; that they have offered to provide for him and to furnish him a proper room, medical care, medicine, clothing and food in the home of the complainants with all the necessities of life suitable to the condition, age and standing in life of said defendant, Lavelle Bee Eddy; that complainants have paid the cost of cultivating, fertilizing, pruning and otherwise caring for the citrus trees on the property described in said contract, all in accordance with the terms and in reliance upon said contract; that complainants

have supplied defendant, Lavelle Bee Eddy, with all necessary clothing, food, medicine and medical attention contemplated by the terms of said agreement; that complainants have kept said offers open and outstanding until defendant repudiated and refused to perform said contract; that complainants have done and performed all things on their part to be done and performed to entitle them to full performance of said contract on the part of defendant, Lavelle Bee Eddy, except only the delivery by defendant of the said deed; that, in so doing and in reliance upon said contract, and not otherwise, the complainants have necessarily expended in the performance of said contract by payments for defendant, Lavelle Bee Eddy, and by payments for necessary expenses in the care and preservation of said premises, including personal obligations incurred in that behalf, the sum of $2,146.15, not including interest.

"That complainants have been ready, willing and able to perform said contract and have so informed and advised defendant and have demanded performance of said defendant, Lavelle Bee Eddy, but that the said defendant, Lavelle Bee Eddy, has refused to deliver possession of said premises and still retains said possession and the benefits thereof; that he has refused to accept a home with complainants and has repudiated in all respects his duties arising from said contract, and that he has absolutely neglected and refused to perform the same or any part thereof."

The bill of complaint was filed on August 15, 1931; summons were issued and served on August 21, 1931; on the rule day of September, 1931, the plaintiffs filed an amended bill and on the same day the defendant, Eddy, filed a verified answer to the "Bill of Complaint." The bill did not waive answer under oath and the answer of the defendant was under oath. The answer filed on the day of filing the

amended bill has been taken as the answer to the amended bill.

A large portion of the answer is by way of confession and avoidance, attempting to avoid the contract by setting forth that the defendant, by reason of his old age was taken advantage of by the plaintiffs through fraud and misrepresentation. The answer also denies the payment of money as set forth in the bill except to the extent of $500, and further denies, among other things:

"That the complainants have offered to provide a life membership for said defendant in some institution as good as the Baptist Old People's Home at Maywood, Illinois; this defendant denies that complainants have offered to provide for him and to furnish him a proper room, medical care, medicine, clothing and food in the home of complainants with all the necessities of life suitable to the condition, age and standing of this defendant; this defendant denies that the complainants have paid the costs of cultivation, fertilizing, pruning and otherwise caring for the citrus trees on the property described in said contract, or in accordance with the terms thereof; this defendant denies that the complainants have supplied this defendant with all necessary clothing, food, medical care and attention contemplated by the terms of said agreement; this defendant denies that the complainants have done, and performed all things on their part to be done and performed to entitle them to full performance of said contract on the part of this defendant; this defendant denies that the complainants are now or have ever been entitled to delivery of deed to the property mentioned and described in said bill of complaint and in said contract attached thereto and made a part of said bill; this defendant denies that the complainants in reliance upon said contract have expended necessarily or otherwise, and that they have become obligated to pay to other than the de-

fendant the sum of $2,146.15, not including interest; this defendant further answering said bill of complaint shows unto the court that the complainants have failed to cultivate, prune and otherwise care for the citrus trees that are located on the property described in said bill of complaint, and as obligated to do under and by virtue of the terms of the contract, but have so neglected said citrus trees that they have deteriorated in value and condition to the extent that said property has become damaged to an extent far in excess of any sum or sums which the complainants have actually expended or which the complainants allege in and by said bill of complaint that they have expended by reason of said contract.

"This defendant further answering said bill of complaint denies that the complainants have been ready, willing and able to perform said contract and denies that they have ever demanded performance of this defendant, and denies that he has ever refused to deliver possession of said premise; this defendant denies that he has refused to accept a home with the complainants and avers the truth to be that no such offer has ever been made by the complainants; this defendant denies that he has in any manner repudiated the duties arising from said contract and denies that he has neglected and refused to perform any part thereof, and avers the truth to be that many times he has demanded of the complainants performance of their part of said contract, which performance the said complainants have failed and refused to do."

Joint and several replications were filed on January 15, 1932, pursuant to leave of court, and thereafter a final hearing was had before the chancellor commencing the 8th day of February, 1932, at which hearing defendant offered no testimony, pursuant to which hearing a final decree was

entered favorable to the defendant, the findings and the decretal portion of which are as follows:

"(A) That the defendant Lavelle B. Eddy is entitled to the same consideration of his answer as if procedure in chancery in the State of Florida had not been changed;

"(B) That the complainants have failed to establish their cause in that they have failed to show compliance with said contract on their part, and are not entitled to the relief prayed in and by their said bill of complaint;

IT IS ORDERED, ADJUDGED AND DECREED

"(A) That the advantage and consideration of the said Lavelle B. Eddy under and by virtue of his sworn answer be and the same is hereby saved and reserved to him.

"(B) That the relief prayed in and by the said bill of complaint on the part of the complainants be and the same is hereby denied, and the bill of complaint is hereby dismissed at the cost of the complainants without prejudice to pursue such other and further remedy as they may be advised in the premises."

to which decree the Whittakers have brought this appeal and made the following assignments of error: (1). The Court erred in refusing to give effect to Section 77 of the 1931 Chancery Act: (2) The Court erred in finding that the plaintiffs have not complied with the contract: (3) The Court erred in finding the plaintiffs are not entitled to any lien upon the premises involved in the contract sued upon; (4) The Court erred in dismissing plaintiffs' bill of complaint; (5) The Court erred in saving and reserving to the defendant, Lavelle B. Eddy, the advantage and consideration of a sworn answer.

We are here called upon to decide the effect of a verified answer under the old or former procedure and under the present procedure.

"Although a defendant cannot read his own answer as evidence for himself, as to any other point than that of costs, he is entitled to have the benefit of his answer, so far as it amounts to a denial of the plaintiff's case, unless the denial by the answer is contradicted by the evidence of more than one witness; the rule of Courts of Equity being, that where the defendant, in express terms, negatives the allegations in the bill, and the evidence is that of only one person affirming what has been so negatived, the Court will not make a decree. The denial, however, by the answer, must in such cases be positive; otherwise, the rule will not apply."

Daniell's Chancery Pleading and Practice (4th Ed.) 843.

The only effect of the oath under the old procedure *was* to require testimony greater than that of one witness as to those matters alleged in the bill which are denied upon oath in the answer. Responsive here means by way of denial. Averments in an answer which are responsive to the bill by way of avoidance must be proved by defendant; and the burden is upon him to establish such matters by a preponderance of the testimony.

Ocala F. & M. Wks. v. Lester, 38 So. 56, 49 Fla. 347; McGourin v. Town of DeFuniak Springs, 41 So. 541, 51 Fla. 502; Tyler v. Toph, 40 So. 624, 51 Fla. 597; American Securities v. Goldsberry, 67 So. 862, 69 Fla. 104, 123; Pittman v. Milton, 68 So. 658, 69 Fla. 304; Mitchell v. Mason, 61 So. 579, 65 Fla. 208; Griffith v. Henderson, 45 So. 1003, 55 Fla. 625; Griffith v. Henderson, 45 So. 1008, 55 Fla. 618.

"The true chancery rule; namely, that the answer as a general rule, whether sworn or unsworn is not evidence for the defendant and casts no burden of proof upon the complainant; the only possible effect of the answer upon the complainant's burden of proof is to reduce it by ad-

missions, never to increase it, except that a positive denial in a sworn answer will require a greater quantum of evidence to sustain the burden."

"The Answer in Chancery Under the State Practice" by Edward McCarthy, Jr., in Florida State Bar Assn. Journal of Jan. 1929, page 25, citing Branch Bank v. Black (S. C. 1827), 2 McCord Eq. 344, 350; Lampton v. Lampton (Ky. 1828), 6 T. B. Mon. 616, 620, Jewett v. Cunard, 3 Woodb. & M. 277, 13 Fed. Cas. 7310 (1847). See also 4 Wigmore on Evidence (2nd Ed.) 333."

An exception to the foregoing rules of course exist when the cause is heard only on bill and answer (before time for taking testimony has expired) for then if the answer is (strictly) responsive by way of denial or responsive only by way of confession and avoidance, the answer is taken as true (whether sworn to or not).

Goodwin v. Phifer, 41 So. 597, 51 Fla. 441; Garrison v. Parson, 33 So. 525, 45 Fla. 335; Lee v. Bradley Fertilizer Co., 33 So. 456, 44 Fla. 787; Fletcher's Pleading and Practice 697.

The old, or *first,* rule in equity was that unless answer under oath was waived the defendant was required to answer under oath. It was also a former rule of the law that the complainant could not deprive the defendant of the right to answer under oath.

Clement v. Moore, 6 Wall (U. S.) 299, 18 L. Ed. 786.

The next, or *second* rule of law was brought about in 1871 when the United States Supreme Court adopted a rule of court in almost the exact language of a former statute of Florida passed in 1917, Section 3136 R. G. S. reading as follows:

"If the complainant, in his bill, shall waive an answer under oath, or shall only require an answer under oath with

regard to certain specified interrogatories, the answer of the defendant, though under oath, except such part thereof as shall be directly responsive to such interrogatories, shall not be evidence in his favor, unless the cause be set down for hearing on bill and answer only; but may nevertheless be used as an affidavit, with the same effect as heretofore, on a motion to grant or dissolve an injunction, or on any other incidental motion in the cause, but this shall not prevent a defendant from becoming a witness in his own behalf under any statute of this state."

which statute was repealed by the "1931 Chancery Act."

By reason of Section 3132 R. G. S. reading as follows:

"In the absence of provisions of the law or rules of practice of this State, the rules of practice in the courts of equity of the United States, as prescribed by the Supreme Court thereof, under the Acts of Congress of the 8th day of May, one thousand seven hundred and ninety-two, shall be rules for the practice of the courts of this State when exercising equity jurisdiction; and when the rules of practice so directed by the Supreme Court do not apply, the practice of the courts shall be regulated by the practice of the high court of chancery in England."

the Federal Rule of 1871 (number 41) was the law of Florida until its repeal by the adoption of the new Federal Equity rules of 1912. It again became the law of Florida by statute in 1917 and continued such until the adoption of the "1931 Chancery Act."

We are now concerned with the present day or *third* rule. In construing Federal Equity rules for which counterparts may be found in the "1931 Chancery Act" the courts have said:

"With respect to the prayer for a subpoena, rule 12 (198 Fed. XXII, 115 C. C. A. XXII) provides that the clerk

shall issue the same whenever a bill is filed upon application by the plaintiff. No prayer for process is necessary, because it is not issued by an order of the court, but by the clerk, under the rule. The prayer that the defendant be required to answer is not necessary, except under rule 40 (198 Fed. XXIX, 115 C. C. A. XXIX) relating to nominal parties, 'unless the plaintiff specially requires him to do so by prayer,' for every defendant, other than a nominal party, is required to answer or take some other step, if he would not have a decree against him. The waiver of an answer under oath seems wholly unnecessary, because the equity rules apparently do not require any answer to be made under oath. It cannot be inferred that an answer should be made under oath, when the bill is not required to be verified by the oath of the plaintiff, except where some special relief pending the suit be required. The answer no longer appears to be the expression of the results of searching the conscience of the defendant. The method pointed out in rule 58 (198 Fed. XXXIV, 115 C. C. A. XXXIV) for procuring discovery by means of interrogatories is now the method of searching the conscience of the opposite party. That rule provides that the answers to the interrogatories shall be in writing under oath and signed by the party. It seems, therefore, a proper inference from the provisions of the equity rules with respect to oaths to portions of the record other than the answer, and the omission of the requirement of an oath to an answer, than an answer in equity need not now be made under oath."

Pittsburgh Water Heater Co. v. Peler Water Heater Co. (D. C. Penn.), 222 Fed. 950.

Judge Learned Hand, in discussing the new Federal Equity Rules said:

"Before the new rules, and under the old course of equity, the necessity of a plea to a bill arose from the rule that if the defendant once consented to answer, he must answer fully, and that therefore in his answer he must respond to all the charges of evidence contained in the bill. This has now been changed by the abolition of pleas (rule 29, 198 Fed. 115 C. C. A. XXVI) and by the provisions that discovery shall be by interrogatories, to which specific objections may be taken (rule 58, 198 Fed. XXXIV, 115 C. C. A. XXIV), and that the pleadings shall contain no evidence, but the 'ultimate facts.'"

Pressed Steel Car Co. v. U. P. R. R. Co. (D. C. New York) 241 Fed. 964.

Dean Lile of the University of Virginia says in reference to the new Federal Equity Rules in his work on Equity Pleadings and Practice (2nd. Ed.):

"The unusual function now performed by the answer under the new Rules—substituting both demurrers and pleas—and the language of the several Rules touching the answer, seem by implication to eliminate the right of the defendant to make oath to his answer, when not required by the bill, and thereby obtain the advantages secured to him by the original practice." (pp. 117, 118.)

The law upon this subject has been well expressed by Mr. Edward McCarthy, Jr., in an article in the Florida State Bar Association Journal of December, 1928, as follows:

"The necessary conclusion to be drawn from this inquiry is that under this modern practice in the federal courts, as in the courts of England, the defensive pleading of the defendant and discovery have been effectually divorced. The defendant has an equal right with the complainant to ob-

tain discovery by means of interrogatories; and the defendant's answer to the bill has no more reason to claim probative force than the complainant's bill. Every basis or reason for the existence of the old rule regarding the probative force of the sworn answer (which Wells, D. J., referred to as 'that absurd rule of chancery practice,' in Eads v. Bacon, 1 Newb. 274, Fed. C. No. 4232), has been swept away; and although the old rule has not been abolished in specific words, the implication that it has been abolished is so clear as not to admit a serious doubt.

"The most persuasive, if not the most logical, argument in support of this conclusion is that the Supreme Court could hardly have intended to preserve the defendant's right to have his sworn answer read as evidence in his favor even when the answer under oath is expressly waived."

The counterparts of the foregoing Federal Equity Rules numbers 29, 40 and 58, are found in the "1931 Chancery Act" in Sections 33, 11, and 44 and 48.

To state the present rule in Florida we may say that as a general rule a defendant's answer in equity is now a defense and not a discovery for benefit of plaintiff except as to interrogatories; his answer is the exercise of a privilege of defense rather than a discovery for the benefit of the plaintiff. Such rule may not be applicable to that portion of an answer of a defendant setting forth an account in a suit for accounting.

We find the rule of Florida to be set forth by Lile and McCarthy (*supra*).

It is our opinion that as a general rule the parties are governed by the law of pleading, practice and procedure as it may exist at the time of their proceeding.

It is likewise our opinion that as a general rule the courts in the exercise of their jurisdiction, are governed by the

law as it existed at the time of its proceeding. See 59 C. J. 1173 *et seq.*

At the time of the filing of this answer by the defendant evidently had a right to answer under oath and such oath to the answer made Sec. 3136 R. G. S (4923 C. G. L.) applicable to the answer until October 1, 1931, on which day the "1931 Chancery Act" became effective and which Act repealed Section 3136 R. G. S. (4923 C. G. L.)

It is likewise our opinion that advantages in pleading gained by parties under one law must yield when in conflict with a law subsequently effective governing the courts in the exercise of their jurisdiction, with the duty on the court to exercise its powers upon proper application so as to avoid any injustice.

Applying the foregoing principles we find

(1) That the cause at the time of hearing was governed by the "1931 Chancery Act."

(2) That the defendant was not entitled to any benefit or advantage by reason of his answer being verified.

This disposes of assignments of error numbered one and five.

As to assignments of error 2, 3, and 4, we find that no proof was offered on behalf of the defendant. We are confronted with the matter of burden of proof, *onus probandi,* as to which we may well cite the following authority:

"In considering the question of: what matters are to be proved in a cause, the first point to be ascertained is, upon whom the burden of proof lies? And here it may be laid down, as a general proposition, *that the point in issue is to be proved by the party who asserts the affirmative,* according to the maxim of the Civil Law: *"Ei incumbit probatio*

*qui dicit, non qui negat."* This rule is common, as well to Courts of Equity as to Courts of Law; and accordingly, when a defendant insists upon a purchase for a valuable consideration, without notice, the fact of the defendant, or those under whom he claims, having had notice of the plaintiff's title, must be proved by the plaintiff." (Italics ours.)

Daniell's Chancery Pleading and Practice (4th Ed.) 849, 850.

"Indeed, in all cases where the presumption of Law is in favor of a party, it will be incumbent on the other party to disprove it; though in so doing he may have to prove a negative."

Daniell's Chancery Pleading and Practice (4th Ed) 851.

And without special application here the following:

"It may also be stated, generally, that whenever a person obtains by voluntary donation a benefit from another, the *onus probandi* is upon the former, if the transaction be questioned, to prove that the transaction was righteous, and that the donor voluntarily and deliberately did the act, knowing its nature and effect. Moreover, where the relation of the parties is such that undue influence might have been used, the *onus probandi* to show that such influence was not exerted, is upon the person receiving the benefit."

Daniell's Chancery Pleading and Practice (4th Ed.), 852.

"In general, it may be taken for granted, that wherever a *prima facie* right is proved, or admitted by the pleadings, the *onus probandi* is always upon the person calling such right in question." (ibid) 850.

The plaintiffs have offered the defendant quarters in their own home. The quoted portion of the contract clearly indicates that the defendant was not required to accept quar-

ters in the home of the plaintiffs as performance on behalf of the plaintiffs except upon two contingencies which from the evidence do not appear to have occurred.

We find these assignments not well founded.

Finding no reversible error the cause is affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL, BROWN and BUFORD, J. J., concur.