**JOSEPH· SCHUPLER and MARY YETTA SCHUPLER, his wife, v. EASTERN MORTGAGE COMPANY, a Florida corporation.**

33 So. (2nd) 586                                        January Term, 1948
January 23, 1948                                                En Banc

*E. B. Donnell* and *Moses Schupler,* for petitioners.

*A. S. Bussey,* for respondent.

BARNS, J.:

Petitioners-defendants seek certiorari to review an order of the chancellor granting plaintiff's-respondent's motion to strike Paragraphs 5, 6, 7 and 8 of a joint and several answer[1]

---

[1] "Answer:

"5. That in answer to paragraph six (6) of plaintiff's bill of complainant, the defendants have no knowledge of the allegations therein contained and request that the plaintiff be held to strict proof thereof.

"6. That in answer to the allegations contained in paragraph seven (7) of the plaintiff's bill of complaint, these defendants have no knowledge of the allegations therein contained and request that the plaintiff be held to proof thereof.

"7. That these defendants have no knowledge of the allegations contained in paragraph eight (8)· of the plaintiff's bill of complaint and request that the plaintiff be held to proof thereof.

"8. That in answer to paragraph nine (9) of the plaintiff's Bill of Complaint that as to Joseph Schupler, he stated that said note is more than twenty (20) years old and comes within the statute of limitations for sealed instruments and therefore said note is of no force.

filed by them, addressed to Paragraphs 6, 7, 8 and 9 of the bill[2] of complaint and an order granting a motion to strike a counter claim. The bill seeks the foreclosure of a purchase money mortgage executed by the defendants.

It is important for petitions for certiorari to show with particularity the harmful error. If the matters supporting the charge of error are too lengthy to be copied into the petition in haec verba, then they should be plead according to their tenor and effect with appropriate page references to the record.

The petitioners' answer to the Bill as contained in Paragraphs 1 to 10 goes to a traverse of bill and no wise attempts to set up any facts in the nature of an avoidance, nor does the "answer" (in form) attempt to set up any facts relating to a superior right in the defendants over the rights of the plaintiff.

Within the "answer" is contained a claim in the "form" of a counterclaim, the substance of which goes directly to the avoidance vel non of plaintiff's bill. The chancellor sustained the plaintiff's-appellee's motion to strike this "counterclaim," of which review is likewise sought.

---

[2] "Bill of Complaint:

"6. That thereafter and on or about the 29th day of August, 1928, W. H. Tunnicliffe as receiver of and for the said First American Bank and Trust Co., by an instrument in writing given under his hand and seal for a valuable consideration therein expressed, duly assigned said mortgage and the notes secured thereby to the Central Farmers Trust Company, as Trustee. . . . (Recordation recited).

"7. That thereafter and on or about the 18th day of November, 1937, the Central Farmers Trust Company as Trustee, by an instrument in writing given under its corporate name and seal for a valuable consideration therein expressed, duly assigned said mortgage and the notes secured thereby to the K-H-J Corporation. (Recordation recited).

"8. That on or about the 3rd day of July, 1946, the said K-H-J Corporation, by an instrument in writing given under its corporate name and seal for a valuable consideration therein expressed, duly assigned said mortgage and the notes secured thereby to the Plaintiff, Eastern Mortgage Company, a Florida Corporation, which is now and has been since the owner and holder thereof. (Recordation recited).

"9. (Substantially states that Note "1" in the sum of $10.666.66, due on or before one year after date, became due and payable on about March 16, 1926, but was not paid except for $5,000.00 paid on or about March 19, 1926, on principal, and $2,666.66 paid July 10, 1926, on principal, and that balance is owing and unpaid)."

From 1915 until the adoption of the "1931 Chancery Act (Ch. 63, F.S.A.) a motion to strike was permitted as a means of testing the sufficiency of an answer presenting an affirmative defense or counter-claim, viz:

"If an answer set up by an affirmative defense, set off or counterclaim, the plaintiff may, upon five days' notice, or such further time as the court may allow, test the sufficiency of the same by motion to strike out. If found insufficient, but amendable, the court may allow an amendment upon terms or strike out the matter."—Sec. 3122, R.G.S.

For a decision under the statute, see Dougherty et al. v. Commercial Credit Holding Company (1932), 104 Fla. 595, 140 So. 470 (per Justice TERRELL).

But we now have *no* such practice, and our statute provides that:

"The defendant in his answer shall in short and simple terms set out his defenses to each claim asserted by the bill, . . . "—Sec. 63.34, F.S., 1941, F.S.A.

Our statute law relative to striking portions of either a Bill or an Answer provides:

"Exceptions to bills, answers and other pleadings for scandal, impertinence or irrelevancy are abolished, but the court may, upon motion to strike or upon its own initiative, strike out any redundant, impertinent, irrelevant or scandalous and impertinent matter which is prejudicial to the opposing party, upon such terms as the court shall think fit."—Sec. 63.23. F.S., 1941, F.S.A.

"Matter should not be stricken from a pleading under the foregoing statutes unless it is wholly irrelevant, or is otherwise improper, and can have no bearing on the equities of the case and no influence upon the decision either as to the relief to be granted or the allowance of costs. . . . "—Kooman's Florida Chancery Pleading and Practice," p. 251.

And for more authorities see the notes to Section 23 of Florida Chancery Act, annotated by McCarthy.

In equity, matter relevant and material to the equities may be stated in an answer, and it is error to strike such matter even though it would affect the equities only to the extent of

the assessment of costs. The test is not whether the answer states a defense but whether the matter is relevant or material:

"If the matter contained in an answer in an equity cause is relevant, or can have any influence in the decision of the subject matter of the controversy, it is not impertinent."—Trustees of Internal Improvement Fund v. Root, 58 So. 371, 63 Fla. 666; Jones v. Hiller, 65 Fla. 532, 62 So. 583; Cummer Co. v. Yager, 75 Fla. 729, 79 So. 272; Boca Grande Inv. Co. v. Blanding, 77 Fla. 536, 81 So. 886.

"Where the part of an answer excepted to is relevant, or can have influence in the decision of the suit, either as to the subject matter of the controversy, the particular relief, or as to the costs, it is not impertinent."—Robertson v. Dunne, 45 Fla. 553, 33 So. 530.

"Answer is not impertinent which is relevant or can influence the decision of the suit either as to the subject matter, the particular relief, or as to costs.—Holzendorf v. Terrell, 52 Fla. 525, 42 So. 584.

The stricken Paragraphs 5, 6, 7 and 8 of the Answer do not appear as redundant, impertinent, irrelevant, or scandalous, or such matter as would wrongfully impair the determination of the equities of the parties concerning the controversy. In striking same, we conclude the chancellor erred.

*Re: Striking counterclaim:*

The defendants, after having stated their defense to the Bill by "Answer" presented further pleadings in the "form" of a *counterclaim*.[3] The matters contained in this pleading hav-

---

[3] Counterclaim of the Answer:

"And for affirmative relief it is alleged that the notes and mortgage were issued to the First American Bank and Trust Company as security for part of the purchase price of the above stated real estate by Joseph Schupler and that a good fee simple title to said real estate was obtained by Joseph Schupler in the name of Joseph Schupler, a true copy of such deed is hereby attached to this answer as a part hereof.

"That Mary Yetta Schupler being the wife of Joseph Schupler signed the notes and mortgage to give a release of her dower interest, in said property and for no other reason, as said notes and mortgage where purchase money notes and mortgage of Joseph Schupler and Mary Yetta Schupler could therefore have no other interest in said real estate.

ing the "form" of a counterclaim are in substance matters responsive to the Bill in the nature of an avoidance which might properly have been set forth in the Answer.

The chancellor struck a part of defendants' answer denominated as a "counterclaim" wherein defendants admit the execution by the defendants, Schupler and wife, of the purchase money mortgage and notes plead by the bill of foreclosure (in which transaction the husband, Schupler, acquired title) and pleads that such, as a contract, was of no binding force and effect on the wife except as a release of dower;[4] that Joseph Schupler lost his title by a tax foreclosure by Palm Beach County, pursuant to Ch. 194, F.S. 1941, F.S.A.;[5] that

"That the signing of said purchase money notes and mortgage by Mary Yetta Schupler was not necessary to release her dower as she had no interest and obtained no interest whatever in said real estate.

"That the signing of the notes and mortgage by Mary Yetta Schupler being purchase money notes and mortgage of Joseph Schupler did not add to the mortgage, and therefore Mary Yetta Schupler was and is not liable in any manner under or through said mortgage or notes.

"That Mary Yetta Schupler was under the coverture of marriage and could not enter into a valid contract, and therefore, was and is not in any manner liable, under or through said notes and mortgages.

That Joseph Schupler was divested of all interests that he may have had in said property when the County Palm Beach acquired said property for taxes owed against said property. That the County of Palm Beach, in 1945, obtained a fee simple title to said property free of all liens by purchasing said property at a tax foreclosure sale as provided in Florida Statutes 194.21 and 194.53, Laws of 1941.

"That Mary Yetta Schupler out of her separate estate purchased said property from the County of Palm Beach at public sale as provided for by Florida Statute 194.55, Laws of 1941, and received a deed to said property in fee simple from the County of Palm Beach; which deed is recorded in Deed Book 740, page 283, for Palm Beach County, a true copy of which is attached to and made a part of this answer to the plaintiff's Bill of Complaint. That the purchase of this real estate by Mary Yetta Schupler gave her a fee simple title free and clear of all prior liens as she took the same title as vested in the vendor, the County of Palm Beach.

"Wherefore, the Court is prayed:"

4 Section 3813, R. G. S. 1920, then in effect, was as follows: "3813. (2472). Marriedwomen's covenants. A married woman who joins with her husband in executing a conveyance or mortgage of real property, or of any estate therein, may enter into any covenants as to the title or against encumbrances or of warranty, but such covenants shall have no other effect than to estop her and all persons claiming as her heirs, or by or through her, in the same manner as if she were not married."

5 "Upon issuance of a tax deed to any property, under the provisions of this chapter, all right, title, interest in or liens upon said property, except liens for general taxes of equal dignity with county taxes, shall be cut off and forever declared null and void." Sec. 194.53, F.S. 1941, F.S.A."

the wife, out of "her separate estate" purchased the property from the county and thereby acquired a title free and clear of all prior liens.

In our practice the "motion to strike" parts of an answer is a substitute for an "exception." See Sec. 63.23, F.S.A., supra. It should not be treated as a demurrer because under the former practice, as well as under the present practice, a demurrer to answer was a thing unknown to chancery practice.

"Objections to affirmative defense. Exceptions to the answer do not perform the office of a demurrer in presenting the question whether the facts averred in the answer constitute a defense to the case made in the bill; and as it is not permissible to file a demurrer to an answer, if it is desired to submit the case on the questions of law arising on the answer, the only method is by setting down the case for hearing on bill and answer. If the defense is not good, the proof of it will be of no avail, and the complainant will have the full benefit of his objections at the hearing."—Fletcher's "Equity Pleading and Practice," p. 354.

Two-fold Nature of Answer:

"An answer in cases where relief is sought, properly consists of two parts, and serves a double purpose; First, that of answering the case as made by the bill; and, secondly, that of stating to the court the nature of the defense on which the defendant means to rely."—Fletcher's "Equity Pleading and Practice," p. 318.

It appears very evident that the pleader has confused defensive matters in avoidance with counterclaim, when, in fact, the distinction is great.

Upon motion of plaintiff, the court struck the counterclaim. Our statute for testing the sufficiency of a counterclaim provides:

" . . . if an answer asserts a counterclaim and prays affirmative relief any cross-defendant may, upon due notice, test the sufficiency of the same by motion to dismiss the counterclaim. If found insufficient but amendable the court may allow an

amendment upon terms, or dismiss the counterclaim."—Sec. 63.41, F.S.A.

"Motions to strike have long been recognized as one means of attacking pleadings for frivolity and impertinence and for palpable and serious defects in form. . . . "—Kooman's "Florida Chancery Pleading and Practice," p. 250.

" . . . But a pleading in proper form should not ordinarily be stricken for insufficiency. Its sufficiency should be tested by motion to dismiss or other appropriate proceedings. . . . "—Kooman's "Florida Chancery Pleading and Practice," p. 252.

Motion to Strike—Motion to Dismiss—distinguished:

" . . . A motion to strike a bill of complaint or counterclaim should be distinguished from a motion to dismiss and the two remedies should not be indescriminately applied as they are governed by essentially different rules of procedure. A bill or counterclaim in proper form duly filed should not be stricken for insufficiency. Its sufficiency as a pleading should be tested by motion to dismiss. The summary disposition of pleadings by motion to strike is the exercise of a necessary but delicate power which should be cautiously applied. A motion to dismiss goes to the bill or counterclaim as an entirety for insufficiency, while a motion to strike is applicable to such pleadings where the whole or any part thereof is wholly irrelevant or for any reason improper. . . . "—Kooman's "Florida Chancery Pleading and Practice," p. 253.

In equity, maxims governing the action of the chancellor are that "a court of equity ought to do justice completely, and not by halves" and that "equity will not enter a partial or incomplete decree."

"The rule is that equity will not enter a partial or incomplete decree. Having taken cognizance of a cause for any purpose, a court of equity will ordinarily retain jurisdiction for all purposes, decided all issues which are involved by the subject matter of the dispute between the litigants; award relief which is complete and finally disposes of the litigation . . ." —19 Am. Jur., Equity, Sec. 127, pp. 126-127. See also key number series on Equity Key No. 39.

"It is a settled principle of equity that once it takes jurisdiction it will retain the same for all purposes to give full, complete and adequate relief as between all parties touching the subject matter involved therein. The powers of a court of equity are and should be coextensive with the rights of the parties in the subject matter involved."—Deggs v. First State Bank of Eustis, et al., 145 Fla. 438, 441, 199 So. 564. (Per Justice ADAMS).

In order that equity might do complete justice, defenses should be fully stated:

"Besides answering the case made by the bill, the defendant must state in his answer all the circumstances of which he intends to avail himself by way of defense; for he is bound to apprise the complainant by his answer of the nature of the case he intends to set up, and he cannot avail himself of any matter which is not stated in his answer, even though it should appear in his evidence. A complainant has a right to be informed by the answer, not only of all the facts to be proved, but of the use to be made of them, and of the nature of the conclusions intended to be drawn from them."—Fletcher's "Equity Pleading and Practice," p. 323.

"In deciding whether matters objected to are pertinent or not, all substantial doubts are to be resolved in favor of their pertinency, and nothing should be expunged which the defendant has a right to prove, and which, if proved, can have any influence either in deciding whether the complainant is entitled to any relief to which he may be entitled, even down to the question whether he shall have relief with or without costs."—Fletcher's "Equity pleading and Practice." p. 344.

When Cross-Bill (or Counterclaim) improper:

"Where the matters of the cross-bill are equally available as against the complainant by an answer to the original bill a cross-bill is unnecessary. Sanderson's Adm'rs. v. Sanderson, 17 Fla. 820, 834; 16 Cyc. 327."—Herrin v. Abbe, 55 Fla. 769, 772, 46 So. 183.

"This is subject matter of defense to the original suit, and not the proper subject for a cross-bill. 14 Ga. 167; 20 Ga. 472; 3 Sand. Chy. 273; 34 Ala. 15."—Sanderson's Adm'rs. v. Sanderson, 17 Fla. 820, 834.

Our statute provides that:

"The defendant in his answer shall in short and simple terms set out his defenses to each claim asserted by the bill. . . . "—Sec. 63.34, F.S., 1941, F.S.A.

At one time it was necessary to file cross-bill or counter-claims in order to present affirmative defenses, but, as the courts and statutes became more liberal in allowing all defenses to be presented by "answer," they naturally became more strict in allowing cross-bills or counterclaims. It is evident that it is a better public policy to have two pleadings than four, on the same controversy.

Taylor v. Federal Farm Mortgage Corporation, 141 Fla. 703, 193 So. 758, seems to have been given some consideration as applicable. That case as presented to this Court was on appeal of a decree granting a writ of assistance to the mort-gagee-purchaser at foreclosure sale upon a hearing upon a rule to show cause, and the defendant's answer. It was an adjudication of the equities after the procedural process leading to the hearing had been completed. The respondent made her "answer" setting forth her claim in respect to plaintiff's claim. No motion to strike the answer was involved there, as it is here.

In the case at bar, the stricken pleadings of the defendant appear to allege the only title on which plaintiff, if he be successful, can impose his mortgage lien, and these same stricken pleadings allege as a predicate for their establishment by evidence the title and claim which the defendant's wife has as against the plaintiff's bill.

The questions before the chancellor and before this Court are of necessity the same. It is *not* a question of what are the equities as between the parties, for that cannot be determined on the paper pleading, viz: A "motion to strike." The ultimate equities have not been decreed. There has been no final hearing on final decree.

Of course the substantive law will be taken into consideration in passing upon procedural matters but the procedural process is only a means of arriving at a pleading statement of the parties, in order that each may be advised of adversary claims and also to advise the chancellor. The law does not

exact that sufficiency of an answer of a defendant in equity which, if proven, would *require* a decree in favor of the defendant. This is not true as to pleas in law actions and there are no demurrers to answers in equity as to pleas in law.

We are not now and cannot at this time with propriety pass on the ultimate equities. The cause should be allowed to proceed on the pleadings before the chancellor for the adjudication of Mrs. Schupler's equities. After the chancellor passes on them at final hearing, as was done in the Taylor case, then we might, but not before; we must be patient and let this cause proceed as did the Taylor case.

Equity regards the substance, and not the form:

"The maxim, 'equity regards substance rather than form,' is expressed in various ways and stresses the intent or spirit of the case. 'A court of equity," it is said, 'will look to the circumstances and not to the form of the transaction.' Again: 'Equity looks to the substance and not the shadow, to the spirit and not the letter . . . It seeks justice rather than technicality, truth rather than evasion, common sense rather than quibbling.' And again: 'It has always been recognized as the right, if not always as the absolute duty, of a court clothed with the equitable jurisdiction which is here properly invoked, to apply its x-rays to all masks and covers and see through to the real substance."—19 Am. Jur., Equity, Sec. 459.

If such is to be a guiding principle for the determination of the substantive rights of the parties, equity, moved by the same principle, might as well lend a like hand concerning procedural processes. Under the former practice, upon the overruling of a "plea," the chancellor was permitted to order that such plea stand for an answer. (See Fletcher, (Ib.) 313). "Equity seeks to do justice."

Prompted by the circumstances and the maxim "equity regards substance rather than form" in ruling on the motion to strike the so-called counterclaim, it would have been appropriate for the chancellor to have denied the motion and to have ordered that the same stand as a part of the answer unless said defendants should within a specified time file an amended counterclaim.

For the Court to have allowed the so-called counterclaim to stand as a part of the defendants' "answer" would not have been to adjudicate it to be a defense to the Bill of Complaint, and we do not so adjudicate it. The sufficiency of the answer as a defense may be tested by setting the cause down for a hearing on a "motion for decree on bill and answer" as provided by Sec. 63.40, F.S.A., upon which hearing the allegations of the answer, according to their legal effect, will predominate and control over the allegations of the bill. See Whitaker v. Eddy, 109 Fla. 535, 147 So. 868.

It was error to strike the counterclaim, and certiorari is granted and said other quashed.

TERRELL, CHAPMAN and SEBRING, JJ., concur.

THOMAS, C. J., BUFORD and ADAMS, JJ., dissent.