219 So.2d 110 (1969)
FRANK J. ROONEY, INC., a Florida Corporation, Appellant,
v.
CHARLES W. ACKERMAN OF FLORIDA, INC., a Florida Corporation, Appellee.
No. 67-1067.
District Court of Appeal of Florida. Third District.
February 4, 1969.
Rehearing Denied March 12, 1969.
*111 Rosenberg, Rosenberg, Reisman & Glass, Miami, for appellant.
Knight, Underwood, Peters, Hoeveler & Pickle, Miami, for appellee.
Before PEARSON, BARKDULL and HENDRY, JJ.
PER CURIAM.
This appeal involves the construction of a sub-contract to provide an air conditioning installation in an apartment project. From the record on appeal, it appears that Rooney was the general contractor engaged to construct an apartment house complex in Pinellas County. He employed the appellee as the air conditioning sub-contractor, and they executed a written contract which, among other things, contained the following provisions: (1) provision relative to incorporating the general contract by reference, which general contract also included by reference a printed set of provisions known as the American Institute of Architects (hereinafter, A.I.A.) general provisions;[1] (2) specific provision relative to extras to the contract.[2]
*112 Following completion of the work, the sub-contractor demanded $45,156.37 for alleged extras and demanded that this item be submitted to the American Board of Arbitration. His basis for the arbitration demand was that the arbitration clause of the A.I.A. general provisions were incorporated by reference in the general contract, and further, that the general contract was made a part of the sub-contract by reference.[3] Rooney disputed this reasoning, contending that there was no general provision for arbitration; and even if there were, that the specific items for extras were excluded therefrom by the provision relative to leaving these disputes to the architect.
Rooney instituted a proceeding in the circuit court to enjoin any arbitration proceedings, which resulted in the final order here under review. The order found that the items, recovery for which was sought, were for extras [work beyond that originally entailed in the contract]. It also found that the A.I.A. general provisions relative to arbitration were incorporated in the sub-contract by reference, and that these extra items should be arbitrated, thereby disregarding the contention of Rooney that items of extras should be determined by the architect. This appeal ensued. Two points were preserved: (1) that there were no arbitration provisions in the sub-contract; (2) that if there were arbitration provisions, they did not encompass extras.
We find no merit to the first contention of the appellant. All the relevant documents were made a part of the sub-contract and, as to items covered in the sub-contract [for which the sub-contractor was to receive the sum of $387,000.00], if a dispute arose he was entitled to arbitration pursuant to the A.I.A. general provisions. Quarngesser v. Appliance Buyers Credit Corp., Fla.App. 1966, 187 So.2d 662; Tutko v. Banks, Fla.App. 1964, 167 So.2d 110.
However, we find merit in the appellant's second argument, which contends that the extras were not included as arbitrable matters because such extras go beyond the scope of the original general contract. Initially we recognize that the parties had the right to contract as they desired. S & W Motors v. Mack Trucks, Inc., Fla.App. 1967, 198 So.2d 70; Howell v. Howell, Fla.App. 1964, 164 So.2d 231. The sub-contractor bid the project based on the plans, specifics, general contract, addendum, etc. To perform this work, he was to be paid $387,000.00. If a dispute arose as to this work, materials, etc., he had a right to arbitration under the A.I.A. general provisions. However, the sub-contract on its first page specifically provided that if he was to make a claim for extras which was above and beyond the basic sub-contract price [something that was not subject to competitive bidding], and if a dispute arose as to the amount to be charged for this work, the parties agreed that the final determination would be by the architect.[4] We find the provisions of the contract relating to arbitration for those items contained in the basic agreement, and leaving the determination of extras which were items beyond the sub-contract to the architect, to be valid.
It was not necessary for the parties to agree that all disputes be decided by the same authority. They had a perfect right to make a distinction between claims that would arise under the original sub-contract, the total price of which was known at the time of the execution of the contract, and to provide a different method for claims that would arise subsequent to the execution of the sub-contract and beyond the terms thereof by the very nature of their description [being extras and work performed *113 outside the terms of the sub-contract].
Therefore, we do not think that the items which were found by the trial judge to be extras [which were sought in the amount of $47,156.37 by the appellee] were subject to arbitration, and further hold that the parties should be left to their ordinary remedies for alleged breach of the contract. This is particularly so when it is remembered that, traditionally, agreements to arbitrate have been strictly construed because they have the effect of ousting a court of competent jurisdiction of the authority to determine a question initially which will arise in the future. Flaherty v. Metal Products Corp., Fla. 1955, 83 So.2d 9; Fenster v. Makovsky, Fla. 1953, 67 So.2d 427. It has only been since the adoption of Ch. 682 Fla. Stat. (1967), F.S.A. that these agreements have been recognized as valid in the state of Florida.
Finally, we also recognize the maxim in equity that where a party properly invokes a court's equity powers in order to seek a declaration of his rights under a contract, such court is fully empowered to retain jurisdiction for all purposes, decide the issues which are involved by the subject matter of the dispute, and award relief which is complete and finally disposes of the litigation. Eg., Schupler v. Eastern Mort. Co., 160 Fla. 72, 33 So.2d 586, 590. This rule is favored because it avoids piecemeal determination of the parties' rights, and will apply notwithstanding contractual provisions for arbitration. Cruger v. Allstate Ins. Co., Fla.App. 1964, 162 So.2d 690.
Therefore, for the reasons stated, we hereby reverse the court's order which dismissed the appellant's complaint and direct the chancellor to proceed in order to determine the validity of the appellee's claim.
Reversed and remanded with directions.
NOTES
[1] Sub-contract, Art. I, reads in pertinent part:

"The Subcontractor shall and will provide all labor, materials, scaffolds, tools, and equipment and perform all the Work for a complete installation of all required air conditioning, heating, ventilation, plumbing and drainage work for the project; all to be in strict and complete accordance with all the Plans, Specifications, and Addenda to date as prepared by the office of the Architect * * *."
Sub-contract, Art. VI, reads in pertinent part:
"The Subcontractor assumes for the portion of the Work covered by this Contract, all obligations placed upon Rooney in the General Contract, the Plans, Specifications and General Conditions mentioned in Article I, which Contract, Plans, Specifications and General Conditions are hereby made a part hereof. These documents are available at all reasonable times at the office of Rooney for examination by the Subcontractor."
[2] Sub-contract, Art. VIII, reads in pertinent part:

"No alterations except as provided for in Articles VI and VII hereof shall be made in the Work covered by this Contract except upon the written order of Rooney, and when so made the value of the work to be added or omitted shall be stated in said order, and the amount added to or deducted from the Contract price. * * *"
[3] Relying upon Sub-contract, Arts. I and VI, note 1, supra.
[4] See footnote 1, supra.