418 So.2d 339 (1982)
The CITY OF CORAL GABLES, Florida, Appellant,
v.
Warren WEPMAN, As Trustee, Emil J. Gould and Estelle Gould, Appellees.
No. 82-126.
District Court of Appeal of Florida, Third District.
August 3, 1982.
Rehearing Denied September 2, 1982.
Horton, Perse & Ginsberg and Mallory H. Horton, Miami, for appellant.
Robert A. Freeman and David A. Freedman, Miami, for appellees.
Before BARKDULL, BASKIN and DANIEL S. PEARSON, JJ.
PER CURIAM.
In 1974 the city enacted a zoning ordinance regulating the height of multi-unit residence buildings that was applicable only to appellee's property. Upon appropriate proceedings the circuit court found the zoning ordinance unconstitutional and by final judgment enjoined the city from enforcing its "provisions".[1] *340
*341 The city did not appeal this judgment, but instead, adopted a new ordinance purportedly applicable to various properties in the city. But, in actuality, after the city exempted over 5000 parcels from its effect, it was applicable only to appellee's property. Appellee sought relief against the subsequent ordinance by independent action.[2] He also sought relief in the original proceedings against the subsequent ordinance contending that it violated the prior injunction by attempting to enforce the same provisions relative to the height of the multi-unit buildings that might be constructed on the property. After taking testimony the trial court entered an order as follows:
The Plaintiffs herein seek post-decretal relief regarding the validity of Defendant's Zoning Ordinance No. 2171, as applied to Plaintiffs' land.
This cause was previously before the Court in October, 1975, resulting in the entry of Final Judgment for Plaintiffs issued October 15, 1975. In said Final Judgment the Court made numerous findings of fact and conclusions of law, and permanently enjoined Defendant, The City of Coral Gables, from enforcing the provisions of Zoning Ordinance No. 2077 whereby a height limitation of "low profile" buildings, and density limitations, were attempted to be placed upon *342 Plaintiffs' land in regard to that certain real property described as:
Block 3, Block 4, and the East 235 feet of Block 5 of Sunrise Harbour, according to the plat thereof recorded in Plat Book 65 at Page 22 of the Public Records of Dade County, Florida.
Having heard substantial testimony, reviewed all pleadings, pertinent documents and exhibits, and being otherwise fully advised, the Court makes the following findings of fact and conclusions of law:
1. This Court has jurisdiction over the parties and the subject matter and is authorized to exercise its equitable power to render full relief, prevent multiplicity of litigation, and to provide finality to protracted litigation. Donnelly v. Mann, 68 So.2d 584 (Fla. 1953); Tremont Co. v. Paasche, 81 So.2d 489 (Fla. 1955); Schupler v. Eastern Mortg. Co., 160 Fla. 72, 33 So.2d 586 (1948); Nelson v. Beverly Beach Properties, Inc., 47 So.2d 310 (Fla. 1950); Miami v. Keton, 115 So.2d 547 (Fla. 1959); Knight v. Global Contact Lens, Inc., 220 So.2d 693 (Fla. 3d DCA 1969). A Court of equity has the power to enforce its orders and decrees and has continuing jurisdiction to do so. Hoover v. Scott, 44 So.2d 657 (Fla. 1950).
2. The pre-1975 history of this property has been delineated fully in the Final Judgment previously entered herein. Plaintiffs' property, described above is surrounded on the north and east by two and three-story apartment buildings, on the west by a 13-story apartment building (which has a three-story apartment building to its west) and on the south by a large waterway. Across the waterway from a substantial portion of Plaintiffs' land is an area that has been excavated as a marina. The Plaintiffs Emil J. Gould and Estelle Gould have been the beneficial owners and have controlled the subject property continuously since 1945.
3. All other lands in the Sunrise Harbour Subdivision have been developed in accordance with the applicable zoning regulations and with the concept of the recorded plat.
4. Ninety five days following the entry of the prior Final Judgment herein, the Defendant passed Ordinance No. 2171. This ordinance, currently in force, attempts to impose a height limitation of three stories on Plaintiffs' land. This Court finds that said height restriction is the functional equivalent of the "low profile" restriction that was invalidated in 1975.
5. Upon learning of the passage of Ordinance 2171, Plaintiffs inquired of Defendant's Zoning Department and were advised by the City's zoning administrator that the height restrictions of Ordinance No. 2171 did not apply to Plaintiffs' land in light of the favorable decree received by Plaintiffs approximately three months earlier. In reliance upon the decree and the advice from Defendant's Zoning Department, Plaintiffs expended monies on architectural and planning matters relating to their property. Thereafter, in late 1980, Plaintiffs learned of certain correspondence issued by the City of Coral Gables, in which the Defendant indicated that construction on Plaintiffs' land was restricted to three stories by Ordinance No. 2171. Plaintiffs thereupon promptly and timely commenced these proceedings.
6. The prior Final Judgment herein noted that the Plaintiffs' land had been "singled out as the special subject for discriminatory zoning regulations". Such discrimination continues under Ordinance No. 2171. Equal protection of the law requires that all persons "similarly circumstanced" receive equal treatment. Rodriguez v. Jones, 64 So.2d 278 (Fla. 1953). The 1975 decree found that 13-story construction was permitted "on all other similarly situated property zoned for apartment use." Nonetheless, under Ordinance 2171, Defendant attempts again to place restrictions on Plaintiffs' land such as are found on dissimilar properties, while permitting 13-story construction on other properties that are similarly situated to Plaintiffs' land. The subject ordinance denies to Plaintiffs the equal protection of the law.

*343 Additionally, Ordinance No. 2171 provides that no property "across a waterway" from single-family zoned property may have construction in excess of three stories; this concept is not found in any prior zoning ordinance. Plaintiffs' property is the only parcel in the entire City that would have its building height permissibility adversely affected by the insertion of the "across a waterway" concept into Defendant's Zoning Code.
7. This Court further finds that the application of the height restrictions for buildings of less than 13 stories of Ordinance No. 2171 to Plaintiffs' property violates due process guarantees. The Court finds that there exists no rational basis in fact or in sound principles of planning and zoning to support a height limitation for buildings on Plaintiffs' land of less than 13 stories. The constitutional guarantees of due process of law prohibit governmental intrusion into private property rights where, as here, there exists no substantial relationship between the proposed restriction and the public health, welfare or safety. Tollius v. City of Miami, 96 So.2d 122 (Fla. 1957). As this Court stated in 1975, "there is simply no relation whatever between the zoning regulations imposed on Plaintiffs' property and the welfare of the community at large."
8. The law recognizes the benefits of providing finality to litigation. While prior judgments in zoning disputes are subject to subsequent material changes in circumstances, Aronovitz v. Metropolitan Dade County, 290 So.2d 536 (Fla.App. 1974), it is undisputed that no such changes occurred in this neighborhood during the 95-day interim between the Final Judgment entered October 15, 1975 and the adoption of Ordinance No. 2171 on January 20, 1976. It further appears without question that through the present date there have been no changes in circumstances concerning this neighborhood since many years prior to the initial trial herein. Under these circumstances, no changes in the prior findings of fact are warranted.
9. This Court finds that the Defendant has again acted in an arbitrary, unreasonable and discriminatory manner in respect to the zoning regulations restricting the height of buildings which may be constructed on the subject property. The Plaintiffs have carried their burden of establishing that, as applied to the subject property, the three-story height restrictions of Ordinance No. 2171 are discriminatory, unreasonable, not within the "fairly debatable" rule, and contravene the findings and prohibitions of the Final Judgment previously entered herein.
Based upon the foregoing findings and conclusions, it is hereby
ORDERED and ADJUDGED as follows:
1. The three-story height restrictions for buildings set forth in Ordinance No. 2171 are, as applied to Plaintiffs' property described above, unconstitutional, null and void, and of no force and effect.
2. The Defendant City of Coral Gables is hereby permanently enjoined and restrained from enforcing zoning regulations more restrictive than allowing 13 stories in height for buildings constructed on the subject property described as:
Block 3, Block 4, and the East 235 feet of Block 5 of Sunrise Harbour, according to the plat thereof as recorded in Plat Book 65 at Page 22 of the Public Records of Dade County, Florida.
3. The Defendant City of Coral Gables is hereby permanently enjoined and restrained from enforcing zoning and building regulations on the subject property more restrictive than those now imposed on other properties approved in the Zoning Code for 13-story construction.
4. Jurisdiction over the parties and the subject matter is reserved for purposes of implementing the terms of this Order and for such other purposes as may be just and equitable.
The city now appeals this order. The finding that the second ordinance is substantially the same as the first and that it sought to accomplish the same result, directed *344 to the same pieces of property is supported by competent evidence in the record.
Therefore the order under review is affirmed. See Strawgate v. Turner, 339 So.2d 1112 (Fla. 1976); Alapattah Community Association, Inc. of Florida v. City of Miami, 379 So.2d 387 (Fla. 3d DCA 1980); City of Miami Beach v. Sussman, 376 So.2d 1218 (Fla. 3d DCA 1979); City of Boca Raton v. Boca Villas Corporation, 371 So.2d 154 (Fla. 4th DCA 1979); City of Miami Beach v. Manilow, 241 So.2d 170 (Fla. 3d DCA 1970).
Affirmed.
NOTES
[1] This action challenging the constitutionality of a zoning ordinance of the City of Coral Gables was tried before the Court. Upon consideration of the pleadings, the testimony, the evidentiary exhibits, and arguments of counsel, the Court makes the following findings of fact and conclusions of law:

1. The plaintiffs are the fee owners and record title holders of vacant land in the City of Coral Gables, particularly described as follows:
Block 3, Block 4, and the East 235 feet of Block 5 of Sunrise Harbour, according to the plat thereof recorded in Plat Book 65, at Page 22 of the Public Records of Dade County, Florida.
2. The plaintiff, Emil J. Gould, has held an ownership interest in the above described property continuously since 1945. He was the original owner and developer of Sunrise Harbour Subdivision, which was initially platted and zoned in 1948. A revision of the subdivision plat was approved in 1955. Substantially the same zoning regulations were applied to the property reflected on the revised subdivision plat, consisting of single family residences, apartments and commercial buildings, as shown by plaintiffs' Exhibit 1. All the lands in Sunrise Harbour have been sold as vacant lots, except the above described property owned by plaintiffs, and the purchasers have constructed improvements thereon consisting of single family residences and apartment buildings, in conformity with the applicable zoning. Only a few residential sites remain unimproved in the entire subdivision. The improvements were constructed in substantial accord with the initial zoning regulations.
3. All the property in Blocks 1 and 2 of Sunrise Harbour, which is located immediately East and North of the subject property owned by plaintiffs, has been improved with apartment buildings. These apartment buildings have an approved average density in excess of 30 dwelling units per gross acre. The property abutting the subject property on the West is improved with a thirteen-story apartment building with an approved density of 57.4 dwelling units per gross acre. The subject property abuts the Coral Gables Waterway, which is immediately to the South. The subject property is surrounded on three sides by apartment buildings constructed in accordance with the approved zoning applied to the subdivision.
4. The subject property owned by plaintiffs was originally zoned as follows:
(a) The East 235 feet of Block 5 was zoned A-13, Apartment Use, which zoning classification permitted the use thereof as the site for an apartment building not exceeding thirteen stories.
(b) Block 4 was zoned CC, Commercial Use, restricted to those CC uses needed to serve pleasure boats on the Coral Gables Waterway, including gasoline and oil, stores for marine and fishing supplies, and other similar enterprises not detrimental to the welfare of the area, with a boat slip permitted; and a ten-foot landscaped strip facing the Coral Gables Waterway to be provided without cost to the City.
(c) Block 3 was zoned CB, Commercial Use, with an area of not less than sixty-five percent to be set aside for off-street parking as an accessory use to the commercial zoning.
The original zoning of plaintiffs' property for apartment and commercial use was accomplished by ordinance adopted on October 12, 1948, as part of the zoning of the entire Sunrise Harbour Subdivision. The above stated zoning regulations were imposed by ordinance adopted December 27, 1955, in connection with the zoning of the lands shown by the revised subdivision plat. These zoning regulations remained in force and effect continuously until the adoption of Ordinance No. 2077 on February 12, 1974, which zoning ordinance is the subject matter of this litigation.
5. The City Commission on February 27, 1973, directed the Planning Board to make a study of the existing zoning on plaintiffs' property and to submit recommendations. Thereupon, the Commission declared a building moratorium on the property, which moratorium was extended until January 22, 1974. Pursuant to the direction of the Commission, the Planning Board on September 19, 1973, recommended that:
(T)he entire area under consideration be rezoned for use for a low density, low profile, low use City Park limited to use by Gables residents only, with appropriate parking for park users and additional parking for overflow vehicles from existing apartments in the area if the City can acquire or lease same, or in the alternative, if the City Commission determines that said property cannot or should not be acquired or leased or used for such park purposes because of the same being unfeasible or inadvisable that Block 4 remain as zoned (that is for a marina) and that Block 3 and the East 235' of Block 5 be zoned for apartment use with a maximum development and construction of 10 units per gross acre with said density being transferable throughout the entire tract in low profile buildings as may be appropriate and in compliance with the existing requirements of the Zoning Code.
6. The City Commission on February 12, 1974, enacted Ordinance No. 2077, applicable solely to the property owned by plaintiffs, which amended the Zoning Code to provide that:
(a) Block 3 of Sunrise Harbour is rezoned from CB, Commercial, to A-13, Apartment Use, with 2427 minimum square foot floor area.
(b) Any and all apartment buildings constructed on all of Block 3 and the East 235 feet of Block 5 of Sunrise Harbour shall contain not more than 10 units per gross acre with said density being transferable throughout the property.
(c) Any and all apartment buildings constructed on the subject property shall be low profile buildings as may be appropriate and in compliance with the existing requirements of the Zoning Code.
7. The Court is most reluctant to interfere with the judgment of the legislative body of the City of Coral Gables charged with the responsibility of zoning. However, the action of the City Commission in adopting Ordinance No. 2077 applicable solely to the property owned by plaintiffs cannot be considered fairly debatable. Under the undisputed circumstances reflected by the record, there is simply no relation whatever between the zoning regulations imposed on plaintiffs' property and the welfare of the community at large. No other property within the City of Coral Gables, is accorded the same treatment. Had the particular zoning regulations embodied in Ordinance No. 2077 been imposed on all property similarly situated, instead of applied solely to plaintiffs' property, the question still would not be fairly debatable under the existing situation. To permit the construction of apartment buildings on property almost surrounding plaintiffs' property at densities varying from twenty-seven to fifty-seven dwelling units per gross acre, while imposing on plaintiffs' property only a density restriction of not more than ten dwelling units per gross acre, and to permit the construction of a thirteen story apartment building next door, while restricting plaintiffs' property to a height restriction of "low profile buildings," constitutes spot zoning in reverse. See City of Miami v. Schutte, Fla.App. 1972, 262 So.2d 14.
8. The provisions of Ordinance No. 2077 are made applicable only to the property owned by plaintiffs. No other property within the City of Coral Gables zoned for apartment use is imposed with any density requirements, or a density limitation of not more than ten dwelling units per gross acre. The apartment buildings surrounding the subject property have a permitted average density in excess of thirty dwelling units per gross acre. No property other than the subject property is imposed with the height restriction that all buildings constructed thereon shall be low profile buildings. The Zoning Code permits apartment buildings not exceeding thirteen stories in height to be constructed on all other similarly situated property zoned for apartment use. In conformity with the Zoning Code, a thirteen story apartment building has been heretofore constructed on similarly situated property located immediately West and abutting plaintiffs' property. Moreover, the Zoning Code contains no definition, and sets out no standards or guidelines to be applied for ascertaining the meaning, application, or nature and character of the height restriction "low profile buildings" applied only to plaintiffs' property. This particular property has been singled out as the special subject for discriminatory zoning regulations. The equal protection of the laws requires that every person shall be accorded rights and remedies substantially similar to those given to others under similar circumstances and conditions. Where, as here, the actions of a legislative body are arbitrary, unreasonable, discriminatory or confiscatory, the Courts are required to act to protect the interests of the affected property owners.
9. The plaintiff property owners have carried their burden of establishing that the provisions of Ordinance No. 2077 applied solely to the subject property are arbitrary, unreasonable and discriminatory, and not within the fairly debatable rule.
Based on the foregoing findings of fact and conclusions of law, it is ordered and adjudged that judgment is hereby entered in favor of the plaintiffs, and against the defendant. Ordinance No. 2077, adopted on February 12, 1974, by the commission of the City of Coral Gables, is declared unconstitutional, null and void, and of no force and effect. The City of Coral Gables, is permanently enjoined and restrained from enforcing the provisions of Ordinance No. 2077.
[2] The city now contends that this matter should have proceeded in the independent action when the appellee tried to consolidate the instant proceedings in the trial court with the independent action, the city objected. They will not now be heard to complain having secured a favorable ruling preventing the consolidation.