CLARENCE M. BUSCH, *Appellant,* v. CHARLES H. BAKER, *Appellee.*

Opinion Filed January 28, 1920.

1. If a pleading in equity is wholly irrelevant or otherwise improper, it may be stricken on motion.

2. A chancellor has inherent power of his own motion, to purge pleadings of prolixity, tautology, scandal and impertinence.

3. Where a bill prays for specific performance of a contract to buy back certain land sold by defendant to complainant in part payment of corporate stock sold by complainant to defendant, it is error to strike out portions of the answer which tend to show that complainant induced the original transaction by falsely representing the stock to be fully paid.

4. The maxim "He who comes into equity must come with clean hands" applies with peculiar force in an action for specific performance inasmuch as granting or withholding relief in such cases is within the sound judicial discretion of the court.

5. The principle or policy of the law in witholding relief from a complainant because of "unclean hands" is punitive in its nature.

6. Misrepresentation or concealment is not required to go to the extent of actionable fraud in order to justify a chancellor in his discretion, in refusing to grant specific performance of a contract induced thereby.

7. Motion to strike a portion of an answer must not be too broad, for if the portion assailed contains any matter material to the issue, it should not be stricken.

8. A defendant need not answer inferences of law drawn from the facts stated, nor need he answer immaterial or irrelevant matter alleged in the bill.

An Appeal from the Circuit Court for Dade County; H. Pierre Branning. Judge.

Decree affirmed in part; reversed in part.

*Gramling & Clarkson,* for Appellant;

*Hudson, Wolfe & Cason,* for Appellee.

REAVES, Circuit Judge.—The appellee, Charles H. Baker, whom we shall herein call the complainant, filed his bill in the Circuit Court for Dade County in chancery, against the appellant, Carence M. Busch, whom we shall call the defendant. An answer was filed, and upon motion of counsel for complainant, certain portions of the answer were stricken, and the case comes to this court upon an appeal from the order granting said motion to strike.

The bill alleges briefly that on the 26th of August, 1916, the complainant was the owner of $50,000.00 of the fully paid capital stock of the South Florida Farms Company; that he agreed to sell said stock to the defendant for $41,-000.00, to be paid $14,000.00 in cash, and the conveyance by defendant to complainant of certain real estate in New York City which was heavily encumbered, but in which defendant had an equity estimated at $27,000.00. And the agreement, which was in writing, specified that if the complainant did not sell the New York real estate before March 1, 1918, the defendant would buy the same back from complainant for the sum of $27,000.00 provided the complainant had, in the meantime, paid all taxes and interest accruing against the said property, etc.

The bill alleges that the sale of the said stock in the South Florida Farms Company was consummated and paid for as agreed, to-wit, by paying $14,000.00 cash and deeding the New York property and that the complainant, having failed to sell the New York property by the time stated in the contract, and having kept the taxes and interest paid, etc., as provided in the contract, asked the defendant to buy said property back for $27,000.00, which the defendant refused to do. And this bill is brought to compel the specific performance of the defendant's agreement to buy back the said New York property. The

motion to strike certain portions of the answer was interposed presumably on the theory that the answer claimed affirmative relief under Chapter 6907, Acts of 1915. But counsel for defendant, in their briefs, vigorously disclaim any intention to claim affirmative relief, but say that the answer is purely defensive, and was so intended. We, therefore, shall consider the defendant bound, both in this and the lower court, by the construction placed by his counsel upon his answer, and will dispose of the questions raised accordingly. We may say, however, that we think counsel for complainant were justified in construing the answer as praying for affirmative relief, and but for the fact that the same conclusion as to the merits of this appeal would be reached we might not adopt the defendant's construction of his own answer. Considering the answer as purely defensive the contention of appellant is that the portions of the answer stricken out upon motion are material to his defense, and that, if immaterial, the defect could not be reached by motion; and in either case the lower court was in error. We shall dispose of these propositions in the reverse order stated.

The portion of the answer first stricken is contained in paragraph 2, and reads as follows: "But defendant denies that said stock was fully paid as in said bill alleged, and asserts that, on the contrary, the same was not fully paid and that there was still due the said company upon said stock the sum of $9,000.00, all of which was artfully concealed from the defendant by said complainant." This is claimed by counsel to be an answer to the allegation in the bill, that "complainant was the owner of $50,000.00 of the *fully paid* capital stock," etc., which he sold to the defendant. And the argument is that, this being a suit in equity for specific performance, the doctrine that he who comes into equity must come with clean

hands has peculiar application inasmuch as the granting of specific performance is in the sound judicial discretion of the court, and that the portion of the answer so stricken tends to show that the hands of the complainant were unclean, in that he concealed material facts in procuring the contract upon which he now rests his cause of action. This contention seems well founded. It is true that the allegation falls far short of showing actionable fraud. Huffstetler v. Our Home Life Ins. Co., 67 Fla. 324, 65 South. Rep. 1; Allen v. United Zinc Co., 64 Fla. 171, 60 South. Rep. 182; Williams v. McFadden, 23 Fla. 143, 1 South. Rep. 618. But misrepresentation, or concealment, is not required to go to the extent of actionable fraud in order to justify a chancellor in his discretion in refusing to grant specific performance of a contract induced thereby. Pomeroy's Eq. Jur. (14th ed.), Sec. 400; Harton v. Little, 188 Ala. 640, 65 South. Rep. 951; Smith v. Price, 125 Ark. 589, 189 S. W. Rep. 167.

If it be true that the corporate stock was sold to the defendant as fully paid, when as a matter of fact, there was $9,000.00 unpaid thereon, it cannot be said from the pleadings that the conduct of complainant in concealing that fact was not such as to constrain a court of equity to withhold from him the specific performance of his contract. The extent to which a court of equity may go in considering such matters in an action for specific performance, and the reasons therefor, are so well stated by Pomeroy as to justify a lengthy quotation from said Sec. 400: "A contract may be perfectly valid and binding at law; it may be of a class which brings it within the equitable jurisdiction, because the legal remedy is inadequate; but if the plaintiff's conduct in obtaining it, or in acting under it, has been unconscientious, inequitable, or characterized by bad faith, a court of

equity will refuse him the remedy of specific performance, and will leave him to his legal remedy by action for damages. It is sometimes said that the remedy of specific performance rests with the discretion of the court; but, rightly viewed, this discretion consists mainly in applying to the plaintiff the principle, he who comes into a court of equity must come with clean hands, although the remedy, under certain circumstances, is regulated by the principle, he who seeks equity must do equity. The doctrine, thus applied, means that the party asking the aid of the court must stand in conscientious relations towards his adversary; that the transaction from which his claim arises must be fair and just, and that the relief itself must not be harsh and oppressive upon the defendant. By virtue of this principle, specific performance will always be refused when the plaintiff has obtained the agreement by sharp and unscrupulous practices, by over-reaching, by concealment of important facts, even thought not actually fraudulent, by trickery, by taking undue advantage of his position, or by any other means which are unconscientious; and when the contract itself is unfair, one-sided, unconscionable, or affected by any other such inequitable feature, and when the specific enforcement would be oppressive upon the defendant, or would prevent the enjoyment of his own rights, or would in any other manner work injustice. This application of the principle, better perhaps than any other, illustrates its full meaning and effect; for it is assumed that the contract is not illegal; that no defense could be set up against it at law; and even that it possesses no features or incidents which would authorize a court of equity to set it aside and cancel it. Specific performance is refused simply because the plaintiff does not come into court with clean hands."

On behalf of the complainant, however, it is contended that, defendant having affirmed the contract and retained the stock instead of offering to return the stock and demanding a recision of the entire contract, precludes him from now asserting fraud, misrepresentation or concealment, in procuring the contract as a defense to this action. We do not so understand the law. At least, on the face of the pleadings, it does not so appear. It may be, of course, that defendant has waived the alleged fraud, but conduct amounting to such waiver is not apparent from the face of the pleadings. The general rule of law is that a defrauded party may not only rescind the contract, but, at his option, may affirm the contract and sue for the deceit. Williams v. McFadden, 23 Fla. 143, 1 South. Rep. 618; 20 Cyc. 91 and 87.

If it should appear that defendant had waived any right of action he might have against complainant, growing out of the alleged concealment or fraud, we are not prepared to say that such waiver would preclude the setting up of such conduct as evidence of unclean hands in answer to a suit for specific performance. Harton v. Little, 188 Ala. 640, 65 South. Rep. 951. This case quotes from Baird v. Howison, 154 Ala. 359, 45 South. Rep. 668, as follows: "The principle or policy of the law, therefore, is to reject the suit of, and reprove the plaintiff for his wrong—not to reward the defendant. The plaintiff must be punished, even though it may be at the expense of allowing the defendant, an equally guilty party, to obtain most unjust and unfair advantage for himself."

From what we have said it follows that that portion of the answer under discussion cannot be said to be wholly immaterial, and should not have been stricken.

The next portion of the answer stricken is a continuation of paragraph 2, and, while it contains considerable

matter of very doubtful materiality, it further asserts that the stock was represented to defendant by plaintiff as being "fully paid," etc., and the rule is well established that an exception to a portion of an answer must not to be too broad, but if the portion excepted to contains any matter material to the issue the exception should be overruled. For this reason the portion of the answer referred to should not have been stricken.

The next attack is upon the 4th paragraph of the answer, and applies to more than two pages of typewritten matter. This portion of the answer attempts to set up the defense of usury, based upon the suggested theory that the complainant stood with reference to the New York property in the relation of mortgagee, and the answer claims that the income from the New York property, which the complainant has received exceeds 6%, the highest rate of interest allowed by the laws of New York, thereby making the contract usurious. It is not conceivable how this portion of the answer could have any possible bearing upon the merits of the controversy. The bill alleges "that it was also the understanding of the complainant that he was, in effect, to be a mortgagee in possession of said real estate from the time of accepting the conveyance until the 1st day of March, 1918." This allegation furnishes the explanation of defendant for the insertion in his answer of over two pages of matter about usury. It is obvious that the complainant was not a mortgagee, for the contract had no such legal effect, nor do we understand the bill to allege that complainant was a mortgagee, but counsel suggests an analogy between his client's position under the contract and that of a mortgagee.

The force of the analogy does not impress us. It is apparent that the relation of mortgagor and mortgagee

was not created, but that of vendor and purchaser, with an agreement on the part of the vendor to buy the property back. Under these circumstances the portion of the answer referred to can have no possible bearing upon the merits of the case. A defendant need not answer inferences of law drawn from facts stated, nor need he answer immaterial or irrelevant matter alleged in the bill. Fletcher's Eq. Pleading, Sec. 294.

The next portion stricken is a part of the 6th paragraph, which alleges briefly that it is customary in New York to have the title to real property insured, and that the complainant had entered into some transaction with James A. Moore by which Moore had acquired an interest in said real estate, which, although not a matter of record, was, nevertheless, subject to levy and sale on execution against Moore; that a large judgment now stands against Moore in New York, and that, by reason of said facts, the leading title insurance companies of New York would not insure the title to said property.

If it be true that complainant has so dealt with the property as to make the title doubtful and seriously injure its market value, such facts would seem to be very material in determining whether the Court ought to require defendant to buy the property back under his contract, or leave complainant to his action for damages. It follows that this portion of the answer should not have been stricken.

The next and last portion stricken is the 7th paragraph, which reads as follows:

"Further answering, the defendant shows unto the court that if it should determine herein that complainant is a mortgagee in possession of the prmises described in the bill of complaint, as complainant therein asserts, that it then be decreed by this court that the agreement set

up by complainant's bill herein was usurious and void, and that the complainant forfeited his right to his alleged security constituting his said mortgage, and that the same be surrendered to the defendant, and that he convey said premises to the defendant by a good and sufficient conveyance; and defendant further shows that if an accounting should be ordered in this cause between the parties hereto, that the complainant shall be ordered to account to the defendant for the sum of $9,000.00 still due and unpaid by said complainant upon the capital stock of the South Florida Farms Company by him sold to the defendant as aforesaid."

Counsel for defendant, having disclaimed intention to claim affirmative relief, relieves us of determining the legal effect of this paragraph. The courts seem to have had little to say about the form of answers claiming affirmative relief under equity rules 30, 31, and 33, adopted by the United States Supreme Court November 4, 1912, after which Chapter 6907, Acts of 1915, is modeled, especially in relation to the prayer of such answers. The wording of the quoted paragraph 7 creates considerable doubt as to whether or not it prays for affirmative relief on account of supposed usury, and also for affirmative relief on account of the $9,000.00 unpaid on the stock in question.

But inasmuch as counsel disclaims any desire for affirmative relief, or intention to claim affirmative relief, it follows that said paragraph 7 is wholly immaterial and irrelevant.

Coming now to the question of procedure, and eliminating Chapter 6907, Acts of 1915, was it proper for the chancellor to have stricken the wholly immaterial portions of the answer upon motion. Prior to the enactment

of this statute it had been held in this State that if a pleading in equity was wholly irrelevant, or otherwise improper, it was subject to a motion to strike. Ray v. Williams, 55 Fla. 723, 46 South. Rep. 158; Guggenheimer & Co. v. Davidson, 62 Fla. 490, 56 South. Rep. 801. See also Campbell v. Wilson, 74 Fla. 608, 77 South. Rep. 540. It is also well recognized that the Chancellor has inherent power of his own motion to purge pleadings of prolixity, tautology, scandal and impertinence. Ray v. Williams, *supra;* Kelly v. Boettcher, 85 Fed. Rep. 55, 29 C. C. A. 14; Fletcher's Eq. Pleading No. 117.

Therefore, if the Chancellor had the power of his own motion to strike from the answer the portions herein held to be wholly immaterial he cannot be held in error for striking them upon motion of counsel, even though an exception in lieu of the motion might have been better practice; but a motion may be treated as an exception, courts being more concerned about substance than about form. United States v. Kittenbach, 175 Fed. Rep. 463.

From what has been said it follows that the Chancellor erred in striking the portions of the answer contained in the second paragraph, and in the 6th paragraph. To this extent the order appealed from should be reversed. The order striking the portions of the answer contained in the 4th paragraph, and in the 7th paragraph, should be affirmed.

PER CURIAM.—The record in this cause having been considered by this Court, and the foregoing opinion prepared under Chapter 7837, Acts of 1919, adopted by the Court as its opinion, it is considered, ordered and ad-

judged by the court that the decree herein be and the same is hereby affirmed in part and reversed in part, as stated in the opinion.

BROWNE, C. J., AND TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.