CARROLL, DONALD K, Judge.
This is an interlocutory appeal from an order of the Circuit Court for Duval County granting the plaintiffs-appellees’ motion to strike the second and third defenses in the appellant-defendant’s amended answer and to dismiss the defendant’s *644 amended counterclaim, in the plaintiffs’ suit to require specific performance of the defendant’s guaranty agreement to purchase certain real property at a stated price. The allegations in the mentioned pleadings are intricately detailed, and no useful purpose would be served by reciting them at great length here, but the following summary presents the essential allegations.
The complaint, filed by the plaintiffs as co-executrices of the estate of Edward R. Sewell, deceased, alleged that on October 6, 1956, the plaintiffs agreed to sell and the defendant agreed to buy 192 shares of the common stock of Florida-Georgia Distributing Company, a Florida corporation, and, as a part of the consideration for the said sale, the defendant, joined by his wife, agreed to convey to the plaintiffs certain real property in Jacksonville Beach, Duval County; that the stock was transferred to the defendant, and that the defendant, joined by his wife, conveyed to the plaintiffs by warranty deed the said land; that the parties agreed that this land was then worth no less than $26,000, and, as a part of the consideration for the said stock sale, he executed and delivered to the plaintiffs an agreement dated October 26, 1956, wherein he guaranteed and agreed that if the plaintiffs were unable to find a bona fide purchaser for this property, willing to pay $26,000, within two years from the date of the agreement, the defendant would re-purchase it from them at that price; that no such purchaser was found by October 28, 1958, at which time the plaintiffs gave the required notice and demand upon the defendant to make the re-purchase under the guaranty agreement, yet the defendant failed and refused to do so. The plaintiffs then prayed that a decree be entered requiring the defendant to make the said re-purchase in accordance with the guaranty agreement.
In his stricken second defense the defendant alleged that the plaintiffs represented to the probate court that the plaintiff Isola Sewell, as the widow of the decedent, would take the said land as dower to the extent of $26,000, and the property was turned over to the said plaintiff as her own; that she collected rents and profits therefrom for so long as it was convenient and then abandoned the property to the elements and vandals, and it had become greatly deteriorated and reduced in value, as more fully appeared in the defendant’s counterclaim, reference to which was prayed; that the plaintiffs “are now stopped by their actions” to enforce the guaranty agreement.
In this third defense, also stricken, the defendant said that the plaintiffs “do not come into this Court of Equity with clean hands” and that equity should not assist them in the enforcement of the guaranty agreement; that the transactions of October 24, 1956, (which are described in the counterclaim) were “made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose or intention that the plaintiffs could thereby dispose of their said corporate business without accounting to the probate court for funds and assets of said business used by them for their own uses and purposes in an amount not less than $11,447.84. *
The defendant’s amended counterclaim, which was dismissed by the Court, contains nearly twelve pages of allegations of fraud, overreaching, misappropriations, misrepresentations, and waste on the part of the plaintiffs, in connection with the sale of the corporate business to the defendant and with the guaranty agreement, all resulting in great financial losses to the defendant. The counterclaim alleged that at the time of his death in 1955 the deceased was the sole proprietor of a business known as Florida-Georgia Distributing Company, which was the principal asset of his estate when he died; that the plaintiffs as co-executrices continued this business; that on October 24, 1956, the defendant carried out the agreement of October 6th, and the following things were done: the defendant paid the plaintiffs *645 $7,215; the corporation paid the plaintiffs $40,800 for 408 shares of stock held by them and transferred to the defendant the balance of 192 shares of the corporation; the defendant, joined by his wife, conveyed to the plaintiffs the real property at Jacksonville Beach; the defendant executed the guaranty agreement; that on that date the defendant was without notice or knowledge' of the plaintiffs’ misappropriations of more than $11,000 from the assets of the corporation; that the plaintiffs had also concealed from him a number of substantial obligations owed by the corporation ; that, when the plaintiff Isola Sewell accepted the beach property at a value of $26,000, this constituted a sale of the property for $26,000 net to the estate, wholly fulfilling and discharging the guaranty agreement; that the above and other concealments by the plaintiffs constituted a fraud upon the defendant,' whereby his obligations under the transactions of October 24, 1956, were nullified, and the supposed obligations were without consideration,
The defendant then asserted in his counterclaim that justice and equity required that the plaintiffs should truly and fully account for their indebtedness to him as the successor to the corporation, which had been dissolved, and that, if he should be required to pay to the plaintiffs $26,000 in the repurchase, the plaintiffs should be required to render a full accounting as to the matters set forth in the counterclaim, and any indebtedness found to exist should be set off against the guaranty price of $26,000. Many other acts of fraud and waste are alleged in the counterclaim revolving around the mentioned transactions.
In considering whether the court correctly struck the second and third defenses of the defendant’s answer, it is helpful to review the court decisions of this state generally delineating the purpose and proper contents of an answer in equity.
The Florida Supreme Court said in Town of Lake Hamilton v. Hughes, 1948, 159 Fla. 600, 32 So.2d 283, that in equity matters relevant and material to the equities may be stated in an answer, and it is error to strike such matters even though they affect the equities only to the extent of the assessment of costs; the test -being, not whether the answer states a defense, but whether the matter is relevant or material. To the same effect see Petersohn v. Keech, Fla.1949, 39 So.2d 714; Griley v. Griley, Fla.1949, 43 So.2d 350; Wakulla Edgewater Co. v. Wilson, Fla.1949, 39 So. 2d 548, and Schupler v. Eastern Mortgage Co., 1948, 160 Fla. 72, 33 So.2d 586.
In the case on appeal the second and third defenses in the defendant’s answer unquestionably stated matters relevant and .material to the equities in this suit, .and, consequently, it was error to strike these defenses. . ■ .
An application of this rule of pleading to a factual situation somewhat analogous' tb that in the present case, occurred in Busch v. Baker, 1920, 79 Fla. 113, 83 So. 704, in which our Supreme Court held that, where a bill in equity prays for specific performance of a contract to buy back certain lands sold by the defendant to the plaintiff in part payment of corporate stock sold by the plaintiff to the defendant, it is error to strike out portions of the answer which tend to show that the plaintiff induced the original transaction by falsely representing the stock to be fully paid. We consider this decision as direct authority for our holding that it was error to strike the two defenses here.
In considering the sufficiency of the second and third defenses, the following rules should be borne in mind: A court of equity should not decree specific performance unless the contract sought to be enforced is strictly equitable and free from trickery and deception on the part of the party seeking such performance. Even if the inequity of the plaintiff is insufficient to warrant a court of equity in cancelling the contract, the plaintiff may be refused its enforcement. Dale v. Jennings, 1925, *646 90 Fla. 234, 107 So. 175, and Wood v. Hammel, 1938, 132 Fla. 164, 181 So. 145.
With regard to the defendant’s amended counterclaim, which was dismissed by the Circuit Court, the filing of such a counterclaim was clearly authorized by the provisions of Rule 1.13 of the Florida Rules of Civil Procedure, 30 F.S.A. In its order the Court stated, as its grounds for dismissing the counterclaim, first, that it failed to allege any adjudication of dower by the probate court charged with the administration of the estate in question, and, secondly, that it failed to allege sufficient facts in issuable form to support the attempted charge of fraud. The order also stated that the second defense in the answer was stricken because defective in the said first ground “among other defects”, and the third defense because defective in the said second ground “among other defects.” These two grounds are discussed at this point in our opinion instead of in the discussion of the defenses because both grounds were declared by the Court applicable to the counterclaim and because each of the defenses contains this language “ * * * all as will more fully appear in the counterclaim filed herewith, reference to which is hereby prayed,” and hence the appropriate allegations of the counterclaim are to be read into each of the said defenses in considering its validity.
With reference to the second ground, concerning the allegations of fraud, Rule 1.9(b) of The Florida Rules of Civil Procedure provides in pertinent part: “In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with such particularity as the circumstances may permit.”
It would be as nearly impossible to define “such particularity as the circumstances may permit” as it would be to define what the proverbial “reasonable man” would do. The answer to whether the rule has been complied with, of course, always depends upon the facts of each case. Nevertheless, we observe that the allegations of the counterclaim charging fraud and other related misconduct against the plaintiffs extend in 32 numbered paragraphs over nearly twelve legal-sized pages, not to mention 24 pages of attached exhibits. Regardless of these statistical facts, however, we think the allegations are quite detailed and are characterized by “such particularity as the circumstances may permit,” as contemplated in Rule 1.9(b).
As to the first ground stated in the order appealed from, that the defendant’s second defense and counterclaim were defective in failing to allege any adjudication of dower by the probate court, we are of the opinion this ground did not justify the Court’s actions, for the reason that there were ample other allegations in the second defense of matters relevant and material to the equities, and in the counterclaim to warrant a court of equity in giving all or some of the equitable relief prayed for by the defendant.
Our conclusion is, therefore, that the order appealed from should be and it is reversed, and the cause is remanded with directions for further proceedings consistent with the views herein expressed.
Reversed and remanded with directions.
STURGIS, Acting Chief Judge, and FITZPATRICK, W. L., Associate Judge, concur.