123 So.2d 405 (1960)
Harry FABER et ux., Appellants,
v.
Max M. LANDMAN et ux., Appellees.
No. 1675.
District Court of Appeal of Florida. Second District.
June 22, 1960.
Rehearing Denied July 20, 1960.
*406 Paty & Downey, West Palm Beach, for appellants.
O'Connell & Cooper, West Palm Beach, for appellees.
WILLIS, BEN C., Associate Judge.
The appellants, as plaintiffs in the trial court, brought suit to compel specific performance by appellees, as defendants, of the terms of a contract to convey to plaintiffs the title to one of two lots which defendants had acquired from a third party. After answer, both parties moved for summary final decree. The chancellor granted summary decree in favor of defendants and dismissed the complaint with prejudice.
The facts and the legal principles on which the chancellor based his decree are clearly set forth in the decree and we can do no better than to quote from same:
"The Court finds that the plaintiff Harry Faber, was seeking to buy the property described in the complaint from the owner, J.W. Wallace; that the defendant, Max Landman, discussed the purchase of the same property with the owner, not knowing of the plaintiff's negotiations, and the owner advised said defendant that he would sell the property in question to the defendant for $6,000.00, if it were *407 to be used as an inter-faith center; shortly thereafter the plaintiff contacted the defendant and induced the defendant to buy the property for the plaintiff for the sum of $6,000.00, thus saving the plaintiff $2,000.00 on the original price quoted to the plaintiff by the owner, to-wit: $8,000.00; this was agreed upon between the parties, and a down payment of $2,500.00 was made by the plaintiff, and the title taken in the name of the defendant, subject to a $3,500.00 purchase money mortgage; the defendant was alarmed and grieved over his promise to the owner that the property would be used for an inter-faith center, and sought to rescind the agreement with the plaintiff; a conference was held with the plaintiff and his attorney, which resulted in the conveyance by the defendant to the plaintiff of one of the two lots making up the property in question, the defendant having paid off the purchase money mortgage.
"The plaintiff now seeks the aid of a Court of Equity to compel the conveyance of the second lot by the defendant to the plaintiff; the defendant seeks to hold the second lot for an indefinite period, pending the possible construction of an inter-faith center.
"The Court finds that both the said plaintiff and said defendant acted wrongfully in the purchase of the property in question, and conspired to receive the property from the owner at a reduction of $2,000.00, on condition that the property would be used for an inter-faith center; one-half of the property now stands in the plaintiff's name, and one-half of the property in the defendant's name, though the cost is somewhat greater to the defendant. * * *
"Where two parties have conspired to wrongfully mislead or defraud a third party, and as such, both are guilty of wrong-doing and unclean hands, a Court of Equity will not interfere to aid either one, but will leave said parties in the position in which equity finds them."
Though not recited in the decree, it is clearly shown in the record that the defendant Landman is a rabbi, and that he has expressed the intention of using the lot which he retains as the site of an inter-faith youth center and that it will not be used for any other purpose. He has not limited himself in time for the realization of this project, but has inferentially promised that if it is not done in ten years he will convey the property to Faber. He has expressly disavowed any purpose of personally using the property or otherwise benefiting from it.
The chancellor deemed that the plaintiffs had not come into the court of equity with clean hands and that such court, being a vehicle for affirmatively enforcing the requirements of conscience and good faith, would close its door to those tainted with inequitableness or bad faith relative to the matter in which relief is sought. Precision Instrument Manufacturing Co. v. Automotive Maintenance Machinery Company, 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381.
The appellants undertake to demonstrate that since no restrictions, covenants or conditions of any kind were inserted in the deed from Wallace there can be no liability of Landman to his grantor and consequently Landman is not and cannot be injured. They contend, therefore, that the doctrine of unclean hands is not applicable unless it is shown that the defendant, not some third party, is the victim of the wrong.
This contention is not sustained by the authorities. It is true that a court of equity is not an avenger of wrongs committed at large and that the misconduct complained of must be connected with the matter in litigation and concern the opposite party. Miller v. Berry, 78 Fla. 98, 82 So. 764. Also, it is not essential that *408 those who invoke equity should have led blameless lives since the doctrine of clean hands is not a judicial strait jacket. Roberts v. Roberts, Fla. 1956, 84 So.2d 717. However, there is no bar to apply the doctrine in a case in which the plaintiff and defendant are both parties to a fraudulent transaction or where the fraud is perpetrated on a third party. Hauer v. Thum, Fla. 1953, 67 So.2d 643. Furthermore, the misconduct which in equity soils the hands of a litigant so as to bar him from the aid of a chancellor need not be a crime, Roberts v. Roberts, supra, nor even actionable fraud. Busch v. Baker, 79 Fla. 113, 83 So. 704. It is enough that it be condemned by honest and reasonable men. Roberts v. Roberts, supra.
Whether or not the doctrine is to be applied rests in the sound discretion of the chancellor. Roberts v. Roberts, supra.
All of the applicable principles are observed in the decree entered. The misconduct of the parties in deceiving the owner of the property as to the uses to be applied to the property and thus obtaining a substantial reduction in purchase price certainly was intimately connected with the subject of this litigation. It does concern the defendant vitally. To coerce him to carry out his commitment to the plaintiff would thwart his now worthy purpose of substantially honoring his prior moral commitment to Wallace and to the public. The chancellor was well within the bounds of the discretion vested in him to conclude that the conduct and acts of the plaintiff in connection with the subject of litigation would be condemned by honest and reasonable men.
The summary final decree appealed from is
Affirmed.
KANNER, Acting Chief Judge, and SHANNON, J., concur.